In THE INTEREST of T.A.L., I.T.A.
and M.R.H., Minor Children,

J.H., a/k/a J.C., Mother,

W.H., Father of M.R.H., Appellant,

State of Iowa, Appellee.

No. 92–346.

Supreme Court of Iowa.

Aug. 25, 1993.

Rehearing Denied Sept. 21, 1993.

Patrick C. McCormick, Sioux City, for appellant.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., and Judy Sheirbon, Asst. Atty. Gen., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER, and LAVORATO, JJ.

McGIVERIN, Chief Justice.

Wesley H. appeals the district court order terminating his parental rights to his daughter, Mikeal. The court of appeals reversed and we granted the State's application for further review.

We vacate the court of appeals decision in part and affirm the district court's termination ruling.

I. *Background facts and proceedings.* Jessica H. and Wesley were married in 1988. Jessica had two children, Tabatha and Isaac, from previous relationships. Wesley and Jessica had one child, Mikeal, born August 15, 1989, during their marriage.

On February 15, 1990, Jessica and Wesley each called the Department of Human Services (DHS) to their Sioux City home regarding the children. Jessica reported she was slapping and shaking the children. Wesley reported he was under a great deal of stress from caring for all three children by himself. Apparently, Jessica refused to stay home and help care for the children, claiming she needed her "personal freedom."

Wesley also admitted to physically abusing Jessica's oldest child, Tabatha, on two different occasions. Wesley requested the children be removed from the home.

The children were removed by DHS from Wesley's and Jessica's home that same night and placed in emergency foster care.

On March 30, all three children were adjudicated children in need of assistance as defined in Iowa Code sections 232.2(6)(b) and 232.2(6)(c)(1) (1989). *See* Iowa Code § 232.-96.

Tabatha and Isaac, not involved in the present appeal, were placed together in a foster home. Mikeal, then six months old, was placed in a separate foster home where she remained throughout these proceedings. At the time of her placement, Mikeal had severe rashes, was behind in her immunizations, and suffered from a seizure disorder. Mikeal's foster parents promptly sought medical attention for her, and all these problems were cleared up by the time of the termination hearing in 1991.

DHS devised a case permanency plan and advised both Jessica and Wesley of their responsibilities under the plan in order to get back the children. The plan recommended Jessica and Wesley attend parenting classes, and individual and family therapy. The plan also required both parents to visit the children regularly.

In the following months, Jessica and Wesley repeatedly separated and reunited. As of August 1990, Wesley had discontinued counseling services and requested visitation only with Mikeal. Wesley and Jessica were subsequently divorced in November 1990.

Initially, Wesley's visits with Mikeal were not very regular. By December 1990, however, he married his girlfriend, Jody, who had two children of her own. After that point, Wesley regularly visited Mikeal and called to cancel his visits when he was unable to attend due to work or bad weather.

However, Wesley still did not attend individual therapy or attempt to improve his parenting skills.

Jessica, meanwhile, stopped attending all therapy. After October 1990 she never visited any of her children again. She moved to the state of Washington.

Finally, in February 1991 Wesley and Jody met with a caseworker to discuss what they needed to do to regain custody of Mikeal. DHS again informed Wesley of his responsibilities under the case plan.

In March 1991, DHS informed Wesley it would be seeking termination of his parental rights regarding Mikeal. The caseworker told Wesley he had the right to oppose the termination and had the right to services to address his problems. The caseworker again outlined what services Wesley needed to conform with the case permanency plan, including parenting skills classes.

In May 1991, the State filed a petition at the request of DHS to terminate Jessica's parental rights to all three children and to terminate Wesley's parental rights to Mikeal.

In May, Jody and Wesley finally began family therapy with Meg Swanson at Lutheran Social Services, which contracted to provide services on behalf of DHS.

In August, the termination hearing was held. At the hearing, Swanson did not recommend returning Mikeal to Wesley. She was concerned about the similarities of his current and previous marriages, the short duration of his most recent marriage, the fact that Jody was pregnant with a third child, and that they had not yet addressed discipline techniques or parenting skills. Swanson indicated Mikeal needed a stable placement, which Wesley and Jody had not yet shown an ability to provide.

At the termination hearing, all the caseworkers and professionals involved in the case apparently recommended that Mikeal not be returned to Wesley's care at that time. Several of them recommended termination.

As of the termination hearing in August 1991, Wesley still had not completed any parenting skills counseling, which had been recommended since the beginning of the case.

After the hearing, the district court terminated Wesley's parental rights to Mikeal and Jessica's parental rights as to all three children. Wesley and Jessica appealed.

We transferred the case to the court of appeals. The court of appeals affirmed the terminations as to Jessica but reversed as to Wesley. That court found DHS had not provided Wesley with parenting skills counseling, and therefore there was no clear and convincing evidence that Wesley's rights should be terminated.

The State applied for further review as to the decision involving Wesley, which we granted.

Jessica, however, did not apply for further review. Therefore, she is not presently a party to this appeal and the court of appeals decision remains firm as to Jessica concerning all three children, including Mikeal. Thus, our holding vacates the court of appeals decision only insofar as it applies to Wesley and his parental relationship with his child, Mikeal.

The guardian ad litem for Mikeal joins the position of the State that Wesley's parental rights in Mikeal should be terminated.

■ II. *Scope of review.* We review termination proceedings de novo. Iowa R.App.P. 4; *In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992). Accordingly, we review both the facts and the law, and we adjudicate rights anew. *Id.* Although we give weight to the factual determinations of the juvenile court, especially when considering the credibility of witnesses, we are not bound by them. *Id.*

■ In those cases in which statutory grounds for termination are shown, our main concern is the best interests of the child. *Id.; In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). The child's best interests include both long range and immediate interests. In determining the child's long range interests, we must consider what the future holds for the child if returned to the parent. *In re L.L.*, 459 N.W.2d 489, 493–94 (Iowa 1990). The parent's past performance is relevant evidence on this issue because it may show the quality of future care the parent is capable of providing. *Id.* at 494.

We recognize a parental interest in "preserving the integrity of the family unit." *In re M.M.*, 483 N.W.2d at 814. However, this parental interest is not absolute; it may be lost by certain parental conduct. *In re T.O.*, 470 N.W.2d 8, 10 (Iowa 1991). The State has a duty to see that every child within its borders receives appropriate care and treatment. *In re D.T.*, 435 N.W.2d 323, 329 (Iowa 1989).

■ Our statutory termination provisions are preventative as well as remedial. *In re L.L.*, 459 N.W.2d at 494. Their goal is to prevent probable harm to the child; they do not require delay until after the harm has happened. *Id.*

■ Finally, the grounds supporting termination of parental rights must be proven by clear and convincing evidence. *Id.*

III. *Termination of Wesley's parental rights.* Mikeal was originally removed from Wesley's home pursuant to his request after he and Jessica had both called DHS about their inability to handle the children. Wesley admitted at that time that he had problems with his parenting and discipline skills.

The district court terminated Wesley's parental rights to Mikeal under Iowa Code sections 232.116(1)(c), 232.116(1)(d), and 232.-116(1)(g) (1991). These sections state in relevant part:

1. Except as provided in subsection 3, the court may order the termination of both the parental rights with respect to a child and the relationship between the parent and the child on any of the following grounds:

. . . .

c. The court finds that both of the following have occurred:

(1) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents. . . .

(2) Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstances which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

d. The court finds that all of the following have occurred:

(1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(2) The custody of the child has been transferred from the child's parents for placement pursuant to section 232.102 and the placement has lasted for a period of at least six consecutive months.

(3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so.

. . . .

g. The court finds that all of the following have occurred:

(1) The child is three years of age or younger.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The custody of the child has been transferred from the child's parents for placement pursuant to section 232.102 for at least six months of the last twelve months, or for the last six consecutive months. . . .

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The court of appeals reversed the termination of Wesley's rights because it found that DHS had not provided him with the services he needed to comply with the case plan and that there was no evidence Wesley had not maintained adequate visitation with Mikeal.

■ A. We believe the record shows Wesley did maintain adequate visitation with Mikeal as required under the case plan. Although his compliance with the visitation schedule was less than perfect from Febru-

ary to December 1990, as of mid-December and thereafter Wesley consistently visited Mikeal. If he was unable to attend a scheduled visitation session, he called to cancel and always had reasonable explanations for his absence. Therefore, we conclude Wesley's rights should not have been terminated for failure to maintain "meaningful contact" under section 232.116(1)(d).

B. The State next contends Wesley's rights may be terminated under section 232.-116(1)(c) because Wesley did not utilize the services and counseling DHS offered him to improve his parenting skills. Wesley counters that he was never specifically told how to improve those skills.

▉ We believe the record shows that DHS told Wesley on several occasions what his responsibilities were under the case plan. DHS workers told Wesley he needed to attend individual and family therapy and to improve his parenting skills. Chidi Ojinnaka, a therapist at Lutheran Social Services who was working on behalf of DHS, testified that he was assigned to counsel Jessica and Wesley. Ojinnaka testified that parenting skills would have eventually been addressed and counseled in those sessions. However, Wesley stopped attending the sessions when he and Jessica permanently separated.

We believe the record shows Wesley was advised of his responsibilities under the case plan and was offered adequate services to enable him to perform those responsibilities. Therefore, we conclude clear and convincing evidence exists in the record to terminate Wesley's parental rights under section 232.-116(1)(c).

C. Finally, the State contends that Wesley's rights also may be terminated under section 232.116(1)(g) because, in any event, Mikeal could not be immediately returned to Wesley's care. We agree.

▉ We conclude the first three elements of section 232.116(1)(g) are clearly fulfilled here: at the time of the termination hearing, Mikeal was three years of age or younger; she was adjudicated a child in need of assistance pursuant to section 232.96; and she had been in foster care for at least six of the last twelve months. We need only decide then whether the fourth element is fulfilled. Therefore, the question is whether there is clear and convincing evidence that Mikeal could not be returned to Wesley as provided in section 232.102 *at the present time.*

Under section 232.102(5)(b), a child cannot be returned to the parental home if there is clear and convincing evidence that "[t]he child cannot be protected from some harm which would justify the adjudication of the child as a child in need of assistance and an adequate placement is available."

When DHS intervened at the parents' request in February 1990, Mikeal had severe rashes, was behind in her immunizations, and suffered from a seizure disorder. It was later discovered DHS had been involved with Mikeal, Wesley, and Jessica on a prior occasion when Mikeal was hospitalized and diagnosed as "failure to thrive," and the family received the Family Preservation Project Services at that time.

Wesley admits to having physically abused Tabatha on at least two occasions. Meg Swanson, a therapist, testified to her concerns regarding Wesley's new marriage, the fact that Jody was pregnant with a third child, and that Jody and Wesley had not yet addressed discipline techniques or parenting skills.

Wesley admitted he was unable to handle caring for three children. With Wesley's and Jody's new baby, he will again be responsible for three children. If he were to regain custody of Mikeal, he would have four children to care for. Although Wesley appears to be making some progress in putting his life together, the record indicates that even if his rights to Mikeal were not terminated, Mikeal could not immediately be returned to his home. The DHS caseworkers and therapists involved with this family all agreed Wesley would still need counseling and completion of parenting skills classes before they could recommend Mikeal be returned to Wesley's custody.

Mikeal, on the other hand, has been in a loving foster home now for approximately three and a half years of her four year life. The foster parents have indicated a desire to adopt Mikeal should Wesley's rights be ter-

minated. By all accounts, Mikeal has thrived in this stable foster home.

We believe custody should be quickly fixed and seldom disturbed. *Long v. Long*, 255 N.W.2d 140, 146 (Iowa 1977). "Even more to the point, children should not be made to suffer indefinitely in a parentless limbo." *Id.* We may consider Wesley's past conduct in determining his current parental fitness. *In the Interest of D.J.R.*, 454 N.W.2d 838, 845 (Iowa 1990).

The record here indicates that nothing about Wesley's parenting skills has changed, nor has he made a serious effort to change them. Mikeal is in a stable foster home where she has thrived. We refuse to remove her from such an environment and return her to one similar to the home which caused her to be adjudicated a child in need of assistance in the first place.

We conclude that because Mikeal could not be returned to Wesley's care at the present time, Wesley's parental rights should also be terminated pursuant to section 232.116(1)(g).

IV. *Disposition.* Wesley's application to strike the guardian ad litem's statement of position is overruled and denied.

Despite DHS's recommendations and offers of services, Wesley has not changed his basic situation or his parenting skills, and Mikeal cannot be returned to his custody at the present time. We conclude that the district court correctly terminated Wesley's parental rights as to Mikeal, who deserves the continued opportunity for a stable home life.

The court of appeals decision is affirmed in part as to terminating Jessica's parental rights to the three children and is vacated in part as to Wesley's parental rights concerning Mikeal. The judgment of the district court is affirmed.

**DECISION OF COURT OF APPEALS VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED.**