**IN THE COURT OF APPEALS OF IOWA**

No. 14-0596
Filed June 11, 2014

**IN THE INTEREST OF A.L.,**
**Minor Child,**

**K.L., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Woodbury County, Julie Schumacher, District Associate Judge.

The mother appeals the adjudication of her child, A.L., as in need of assistance, and his removal from her care. **AFFIRMED.**

Molly Vakulskas Joly of Vakulskas Law Firm, P.C., Sioux City, for appellant mother.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, Patrick Jennings, County Attorney, and Diane Murphy, Assistant County Attorney, for appellee State.

Francis Cleary, Sioux City, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Doyle and Mullins, JJ.

**VOGEL, P.J.**

The mother appeals the adjudication of her child, A.L., as in need of assistance, and his removal from her care. The mother asserts substantial evidence does not support the child-in-need-of-assistance (CINA) adjudication under Iowa Code section 232.2(6)(b), (c)(2), and (n) (2013), and that the Iowa Department of Human Services (DHS) did not make reasonable efforts to avoid an out of home placement. Given the extensive services offered to the mother, as well as her inability to care for A.L. and appropriately address his medical needs, we conclude the juvenile court properly adjudicated A.L. CINA. Additionally, the subsequent proceedings have rendered the mother's argument regarding A.L.'s removal moot. Consequently, we affirm.

A.L. was born in December 2004. He first came to the attention of DHS in 2010, when he was removed from the mother's home in mid-September and adjudicated CINA on October 22, pursuant to Iowa Code section 232.2(6)(b), (c)(2), and (n) (2009). Following the receipt of services, he was returned home in mid-December and the proceedings were dismissed in August 2011. This previous CINA case was based on facts similar to those giving rise to the current proceeding, including A.L. missing school, losing weight, and the mother seeking unnecessary medical treatment and prescription medications for A.L.

In the fall of 2013, school officials noticed A.L. was missing many days of school, specifically, thirty-two days out of sixty-four. This was due to the mother not allowing A.L. to attend school because of what she perceived to be A.L.'s

health issues.[1] A.L. fell significantly behind his peers academically as a result of this absence. Additionally, the school reported concerning behavior on the part of A.L., such as not socializing, having meltdowns in the classroom, or crawling under a desk and refusing to talk. Mimicking his mother's words, A.L. also told the other children he had a fatal disease that would result in his early death, and that the children should stay away from him because they could catch his illness. When asked by the school administrative manager why she was taking A.L. out of school for a spinal tap, the mother replied A.L. had an incurable brain disorder that would kill him by age eleven. The administrative manager asserted A.L. was present during this statement and appeared unaffected.

With symptoms described by the mother, A.L. has been diagnosed with bipolar disorder, oppositional defiant disorder, ADHD, celiac disease, Asperger's Syndrome, gastrointestinal reflux disease, esophagitis, asthma, and failure to thrive. A.L. was prescribed fifteen different medications to treat these disorders. A.L.'s primary physician submitted a letter to the court dated November 12, 2013, which stated the following:

> For the last year or so, I have noticed deterioration in [A.L.'s] case where he started to be more combative with regression in his social skills as well as his behaviors and mental abilities. In particular, in the last six months, I have noticed a significant deterioration and at times when he was in the clinic I noticed that he was completely dysfunctional. He had extremely abnormal behavior with no communication skills as well as decreased cognitive function.
> His most recent visit to my office on November 4, 2013, was very alarming. I noticed that he was extremely agitated and he did not have any communication skills. He also had tremors. I was extremely worried and expressed to mom, as I have on numerous other occasions, the need for admitting him to the hospital and

---

[1] A.L. received a medically fragile diagnosis, which halted truancy proceedings.

being observed and supervised by psychology and psychiatric services to try to improve and optimize his treatment protocol.

I do believe that it is in [A.L.'s] best interest to be hospitalized where he will be supervised by experts in child psychology and psychiatry to try to fine tune his medications and maybe even have a much better understanding of his problems. In the past, most of his management was based on mom's observation and at the time I felt that she might not understand exactly what his needs and his problems are.

A DHS investigation was conducted. The DHS worker reported the mother "fixates on [A.L. having] significant health problems despite information to the contrary;" severely restricts his diet; does not allow him to eat with his peers for fear of food contamination that would result in an allergic reaction;[2] gives him multiple medications that result in dark circles under his eyes, lethargy, tremors, and tics; as well as tells him "he will be dead within the next two years." Moreover, in November, a medical report authored by an examining physician noted A.L. "has had an excessive amount of medical care . . . is on multiple medications at high doses and these medications are likely causing effects including abnormal sleeping, tremors, and cognitive decline." The physician also attributed A.L.'s worsening academic performance to ingesting these medications.

Following his November 8, 2013, removal from the mother's care, A.L. was hospitalized for approximately one week and taken off a majority of his medications by the attending doctors. The attending psychiatrist observed "we need to have a fresh start in managing [A.L.] and I recommend a change in his psychiatric and psychology teams." A.L. was placed with his maternal

---

[2] A.L.'s pediatrician was initially concerned he had celiac disease, that is, a gluten allergy, but it was later determined he did not suffer from this disorder. A.L. was not diagnosed with any other food allergies.

grandparents, where he currently resides. School officials and the DHS workers reported he showed almost immediate and significant improvements academically, socially, and physically.

The mother suffers from severe mental health problems, including depression, post traumatic stress disorder, anxiety, and anorexia, which she admits affects A.L. School officials have reported the mother will come to school appearing disoriented, with slurred or rapid speech patterns.[3] At one point before A.L.'s removal, school officials found her in the school basement and she did not appear to know where she was. The mother takes medications, attends therapy regularly, and participates in Alcoholics Anonymous. Though she has a history of substance abuse, she reports having been sober for two years. Supervised visits were offered to the mother since A.L.'s removal, approximately twice each week, which the mother consistently attended. Family Safety, Risk, and Permanency meetings were offered twice each week, with both the mother and A.L. attending. The mother is currently unemployed and receives disability.

A.L. was adjudicated CINA on January 28, 2014, pursuant to Iowa Code section 232.2(6)(b), (c)(2), and (n) (2013), following a contested hearing. A dispositional hearing was held on March 26, 2014. The mother appeals the grounds for the CINA adjudication and the dispositional finding that reasonable efforts were made to avoid A.L.'s removal from the home.

Our review of CINA proceedings is de novo. *In re Long*, 313 N.W.2d 473, 482 (Iowa 1981). We review "both the facts and the law, and we adjudicate

---

[3] The observations of the school officials were reinforced by the mother's psychologist, who, in his report, noted the mother's varying speech patterns and inability to focus consistently.

rights anew." *In re T.A.L.*, 505 N.W.2d 480, 482 (Iowa 1993). "Although we give weight to the factual determinations of the juvenile court, especially when considering the credibility of witnesses, we are not bound by them." *Id.* Our fundamental concern is the child's best interest. *Id.*

To be adjudicated CINA pursuant to Iowa Code section 232.2(6)(b), the State must prove by clear and convincing evidence the parent physically abused or neglected the child, or is imminently likely to do so. Under paragraph (c)(2), the child will be adjudicated CINA if the parent fails "to exercise a reasonable degree of care in supervising the child." Paragraph (n) requires the State to prove the parent's "mental capacity or condition, imprisonment, or drug or alcohol abuse results in the child not receiving adequate care."

We conclude the State proved by clear and convincing evidence grounds to adjudicate A.L. CINA pursuant to each paragraph. The mother required A.L. to undergo years of medically unnecessary procedures, told him he was not going to live past age eleven, and authorized a great number of medications, most of which have been drastically reduced or eliminated since his removal. A.L. has suffered physically, mentally, and academically due to the mother's conduct. It is therefore evident the mother failed to exercise a reasonable degree of care in supervising A.L., and her behavior places A.L. in imminent risk of harm. *See* Iowa Code § 232.2(6)(b), (c)(2).

Moreover, the mother suffers from severe mental health problems that have resulted in A.L. not receiving adequate or appropriate care. While we commend the mother for attempting to address her mental health issues, those issues have severely impeded her ability to care for A.L. safely and responsibly.

This conclusion is supported by the fact A.L. has improved significantly after having been removed from her care, as well as the mother's own admission her mental health issues negatively affect A.L. Therefore, A.L.'s adjudication under Iowa Code section 232.2(6)(n) was proper.

The mother also contests the removal order, asserting DHS did not make reasonable efforts to avoid an out of home placement. While we disagree with her assertion, we also find the subsequent proceedings in the juvenile court have rendered this argument moot. *See In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994) ("Any error committed in granting the temporary ex parte order cannot now be remedied. We cannot go back in time and restore custody based on alleged errors in the initial removal order.").

Having considered the mother's arguments, we affirm the order of the juvenile court.

**AFFIRMED.**