**IN THE COURT OF APPEALS OF IOWA**

No. 15-1523
Filed March 23, 2016

**IN THE INTEREST OF L.T.,**
**Minor Child,**

**T.B., Mother,**
     Appellant.
_____

     Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

     A mother appeals from the order terminating her parental rights.
**AFFIRMED.**

     Nicholas J. Einwalter, Des Moines, for appellant mother.

     Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

     John P. Jellineck, Des Moines, attorney and guardian ad litem for minor child.

     Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

A mother appeals from the juvenile court's order terminating her parental rights. She argues termination was not in the child's best interests and the court should have applied the statutory exceptions to find termination would be detrimental due to her bond with the child and because the child is placed with a maternal aunt. She appeals the juvenile court's denial of her request for an additional six months to address her needs and pending criminal matters or, in the alternative, for a guardianship to be established with the maternal aunt.

### I.     Background Facts and Proceedings

L.T. was born in August 2013. The family came to the attention of the Iowa Department of Human Services (DHS) in June 2014, following allegations of domestic violence between the parents. In October 2014, L.T.'s five-year-old sibling died of a morphine overdose in the mother's house. At that time, there was a no-contact order between L.T.'s parents as a result of domestic abuse, but both parents were violating the order as the father was in the home. During the death investigation, L.T. tested positive for cocaine. L.T. was removed by temporary order on October 15, 2014, and has never been returned to either parent. L.T. was ultimately placed with a maternal aunt, where L.T. continues to reside.

The mother was subsequently arrested and charged due to the drug activity taking place in her home, the death of L.T.'s sibling, and the neglect of L.T. Additionally, a no-contact order was also put in place between the mother and L.T. As a result of these charges, the mother was incarcerated from November 2014 to April 2015, at which time she posted bond. While the mother

denied drug use, numerous controlled substances were found in the home. The State filed a petition to terminate parental rights in May 2015. The case came on for hearing in June 2015.

At the hearing, the evidence showed that from October 2014 through the date of the termination hearing, the mother attended individual therapy six times and also attended a four-week class related to domestic assault. The mother indicated she did not believe any further services were needed to address the domestic violence. The mother was directed to attend parenting classes but missed her first session. The classes were rescheduled to mid-June, which she was in the process of attending at the time of the hearing. The assigned DHS worker testified that although the mother had participated in the majority of services available, including a substance abuse evaluation and a family team meeting, she lacked insight into the reasons L.T. was removed. The DHS worker opined a guardianship was not an appropriate recommendation based on, amongst other things, L.T.'s age, the potential term of incarceration the mother was facing, the serious circumstances that warranted L.T.'s removal from the parents' custody, and the mother's failure to adequately address the issues that resulted in L.T.'s removal. The guardian ad litem and the State similarly recommended termination. The mother testified at the hearing that she had been offered a plea deal to include forty years, although she did not know the extent to which prison time was required.

The father took no position on the petition and does not appeal the termination of his parental rights. The court terminated the mother's parental

rights under Iowa Code section 232.116(1)(d), (h), and (i) (2015). The mother appeals.

## II. Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We give weight to the factual determinations of the juvenile court, especially with regard to witness credibility, but we are not bound by them. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). Our primary consideration is the best interests of the child. *Id.* at 776.

## III. Analysis

To review a decision terminating parental rights, we conduct a three-step analysis. First, we must determine whether the State established statutory grounds for termination by clear and convincing evidence. *See* Iowa Code § 232.116(1); *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Second, if the State established statutory grounds for termination, we consider whether termination is in the child's best interests under section 232.116(2). *See In re P.L.*, 778 N.W.2d at 40. Finally, we consider whether any exceptions under section 232.116(3) weigh against termination. *See id.* at 41. The mother does not appeal the statutory grounds for termination. Thus, we consider only the final two steps in this analysis

### A. Best Interests

The mother argues it is not in the child's best interests to terminate her parental rights. Under Iowa Code section 232.116(2), in considering whether to terminate parental rights, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child,

and to the physical, mental, and emotional condition and needs of the child." "Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" *In re A.B.*, 815 N.W.2d at 778 (citation omitted).

The juvenile court found the safety concerns leading to removal persisted; the mother had failed to acknowledge her role in L.T.'s removal and the death of L.T.'s sibling; and the mother failed to fully utilize, or even recognize a need to utilize, the services made available to her. At the time of the termination hearing, the mother was unable to see L.T. as a result of a criminal no-contact order. The mother also faced numerous criminal charges and a significant prison sentence as a result of those charges. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d at 41. This is particularly true here, as the mother may well be incarcerated until after L.T. reaches the age of majority.

Moreover, "[o]ur statutory termination provisions are preventative as well as remedial. Their goal is to prevent probable harm to the child; they do not require delay until after the harm has happened." *In re T.A.L.*, 505 N.W.2d 480, 483 (Iowa 1993) (citation omitted). We need not wait for L.T. to suffer the same harm suffered by L.T.'s sibling. On our de novo review, we agree with the juvenile court that termination is in L.T.'s best interests.

### B.	Exceptions

The juvenile court need not terminate parental rights if it finds any of the statutory exceptions under section 232.116(3) apply. *See In re P.L.*, 778 N.W.2d at 39. The factors weighing against termination are permissive, not mandatory. *In re A.M.*, 843 N.W.2d at 113. "The court has discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *In re D.S.*, 806 N.W.2d 458, 475 (Iowa Ct. App. 2011).

Iowa Code section 232.116(3)(c) provides the juvenile court need not terminate the parental relationship if it finds by clear and convincing evidence that the termination would be detrimental to the child due to the closeness of the parent-child relationship. The mother contends that because she shares a bond with the child, the juvenile court should not have terminated her parental rights. However, at the time of the termination hearing, the mother admitted she did not think her bond with the child still existed because she had not seen L.T. since she was incarcerated in November of 2014—when L.T. was just over a year old—because of a criminal no-contact order. The juvenile court properly exercised its discretion when it considered the facts of this case and found the bond between the mother and her child did not weigh against termination of the mother's parental rights and specifically found termination is in the child's best interests.

Iowa Code section 232.116(3)(a) provides the juvenile court need not terminate the parental relationship if it finds a relative has legal custody of the child. The mother argues that because L.T. is in the care of a maternal aunt, the

court should have established a guardianship instead of terminating her parental rights. In determining section 232.116(3)(a) did not apply, the juvenile court considered:

> [T]he child's very young age, the significant trauma this child has suffered due to [the child's] parents' criminal activity, [L.T.'s] need for permanency, and the diminished attachment given the parents' lack of consistent contact[ and] the significant criminal charges faced by both parents that will likely result in them being sentenced to prison.

Where, as here, statutory grounds for termination have been proven to exist, the needs of the child are promoted by termination. *See In re L.M.F.*, 490 N.W.2d 66, 68 (Iowa Ct. App. 1992). "The crucial days of childhood cannot be suspended" while the mother serves her prison term, and L.T. "should not be made to suffer indefinitely in parentless limbo." *In re K.C.*, 660 N.W.2d 29, 35 (Iowa 2003) (citation omitted). The maternal aunt is now providing the stability and certainty this child needs. Thus, we agree with the juvenile court that no statutory exception applies to prevent termination.

### C. Additional Six Months

The mother also argues the juvenile court should have given her an additional six months to address her needs and resolve the outstanding criminal charges against her. In order to extend a child's placement for an additional six months, the juvenile court must find the need for removal will no longer exist at the end of six months. *See* Iowa Code § 232.104(2)(b). There is nothing in the record to indicate the mother—given, amongst other things, the existing criminal no-contact order and serious criminal charges pending against her and potential

resulting prison time—would be able to resume care of L.T. in six months or any time thereafter. Accordingly, we affirm the juvenile court's decision.

**AFFIRMED.**