# IN THE COURT OF APPEALS OF IOWA

No. 19-0731
Filed August 7, 2019

**IN THE INTEREST OF T.G., N.G., A.G., and J.G.,**
**Minor Children,**

**C.G., Father,**
        Appellant,

**D.B., Mother,**
        Appellant.

_____

        Appeal from the Iowa District Court for Pottawattamie County, Scott Strait,

District Associate Judge.


        A father and mother separately appeal the termination of their parental

rights.  **REVERSED AND REMANDED ON BOTH APPEALS.**


        J. Joseph Narmi, Council Bluffs, for appellant father.

        Amanda Heims, Council Bluffs, for appellant mother.

        Thomas J. Miller, Attorney General, and Anna T. Stoeffler, Assistant

Attorney General, for appellee State.

        Roberta J. Megel of State Public Defender's Office, Council Bluffs, attorney

and guardian ad litem for minor children.


        Considered by Vaitheswaran, P.J., and Doyle and Bower, JJ.

**VAITHESWARAN, Presiding Judge.**

A mother and father had four children together, born in 2013, 2015, 2016, and 2018.  The department of human services intervened after two of the children were hospitalized for failure to thrive.  On their discharge, the department initiated in-home services.  The parents informed the department that "members of their family are of small stature."  The department agreed but found there stature was not inconsistent with malnourishment.

The State sought and obtained an order temporarily removing the three oldest children from the parents' custody.  When the youngest child was born, he too was removed.

At the adjudicatory hearing, the father again asserted the children's weight and size was a familial trait.  He sought genetic testing to confirm his assertion. The mother seconded the request.  She also noted her first three children were born prematurely.[1]

The district court concluded it lacked "the ability to order or require medical staff to undergo" genetic testing "at this point in time."  The court encouraged the department to "continue to pursue this avenue of questioning with medical personnel."  The children were adjudicated in need of assistance over the parents' objection.

The parents continued to assert a belief that the children did not suffer from malnutrition but were genetically predisposed to low height and weight.  At the parents' behest, the oldest child was evaluated by a gastroenterologist, who

---

[1] Separate documentation indicated the fourth child also was premature.

substantiated their belief. Following an initial evaluation, he noted the child's "overall body . . . [was] quite similar to that of his father's." He recommended a "full genetic consultation." Testing uncovered "a chromosomal abnormality involving the 18th chromosome." Based on the result, the gastroenterologist confirmed that "the likely cause for [the child's] decreased growth parameters was an underlying genetic problem which extended through numerous family members." He further stated the disparity in the child's "bone age" and chronological age could "only be accounted for on a chromosomal basis, since there appear to be no underlying endocrine abnormalities." He opined that the child would not "benefit from participating in a structured feeding therapy program." The department did not complete genetic testing on the remaining children.

The State petitioned to terminate parental rights. Following a hearing, the district court granted the petition as to both parents pursuant to Iowa Code section 232.116(1)(e), (f), and (h) (2018). This appeal followed.

## I. *Mother*

The mother contends (A) the State failed to prove the grounds for termination cited by the district court; (B) the State failed to make reasonable efforts to reunify the parents with their children; and (C) the district court should not have terminated her parental rights based on the parent/child bond. We find the first issue dispositive.

Iowa Code section 232.116(1)(e) requires proof of several elements, including proof of the absence of "significant and meaningful contact." The phrase

"includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent." Iowa Code § 232.116(1)(e)(3).

> This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

*Id.*

The State failed to prove this ground for termination. The mother exercised regular visitation with the children up to four or five times a week. Although her contact was later reduced, she actively engaged with the children throughout the child-in-need-of-assistance and termination proceedings. *See In re T.A.L.*, 505 N.W.2d 480, 483 (Iowa 1983) (concluding parental rights should not have been terminated for lack of significant and meaningful contact where the father maintained "adequate visitation" with the child).

We turn to Iowa Code section 232.116(1)(f) and (h), which require proof of several elements, including proof the children could not be returned to parental custody. From the outset, a significant question developed as to whether malnutrition was truly the cause of the children's low height and weight. At the termination hearing, a service provider conceded the children were "small for their age" despite having been out of their parents' care for the previous fifteen months. Indeed, the oldest child was hospitalized with the same symptoms after he was placed in foster care. And, as noted, the gastroenterologist who evaluated the oldest child ruled out non-genetic causes for the child's small stature. Even the department case manager agreed the two oldest children remained off the growth

chart after being in the State's custody for eight months. While she continued to espouse the view that "there's more factors than just the genetic component as to why [the oldest child] is so far behind," she conceded she was not "a medical personnel to understand all of the pieces of . . . the testing and what all is taken into account."

The only other basis for removal, according to the department case manager, was the condition of the parents' home. She agreed that, on a visit shortly before the termination hearing, the apartment to which the mother had moved "was clean" and "things were put away."

Despite the case manager's concession that malnutrition and the home's cleanliness were the only grounds for removal, the department also based its termination recommendation on the mother's mental illness. We will address whether her illness precluded a return of the children to her custody.

The mother was diagnosed with several disorders, took medication to manage the symptoms, and had a decade-long relationship with a therapist and psychiatrist. According to a department report, the therapist "would meet for as many sessions that [the mother] needed and then they would pause again." During most of 2018, there was a pause in sessions. However, at the termination hearing, the mother testified her psychiatrist wanted to see her once a month "due to DHS being in [her] life" and her increased struggle with "bad anxiety." She also stated her therapist wished to see her once every two months. She had appointments with both in the month before the termination hearing and had another appointment scheduled with her therapist. In addition, when she began experiencing increased

anxiety during the last two months of 2018, she went to an emergency room for treatment. She testified she felt less anxious when the children were in her care.

As for the mother's medication management, she was told to stop taking certain medicines during her pregnancy with her fourth child. After she gave birth to the child in mid-2018, she experienced postpartum depression. She resumed taking her medication but was late on one monthly injection towards the end of 2018 because the medicine was not delivered to her pharmacy on a timely basis. With these exceptions, the mother largely complied with her medication regimen. Because she had an established system in place to address her mental health and because she used the system as needed, we conclude the mother's mental health diagnoses did not preclude a return of the children to her custody.

Finally, we address the mother's compliance with visitation. As noted, the mother exercised up to five semi-supervised visits with the children per week. The department did not move to "fully unsupervised visitation" because of "continued concern regarding the lack of feeding schedules in the home environment." As discussed, the gastroenterologist largely dispelled this concern. The department also reduced semi-supervised visits in the two months preceding the termination because of the mother's increased anxiety. As noted, the mother obtained treatment for her anxiety. Although she missed several visits during this period, we are not convinced her failure to fully participate constituted independent grounds for termination.

Our conviction that termination was not warranted is bolstered by the department's placement of the burden on the parents to "prove to [the department] and juvenile court that they have learned the skills to eradicate the initial concerns

that brought [the department] into their lives."  The burden to prove the statutory elements of termination rested with the State.  *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) ("The burden remains on the State to prove the grounds for termination.").  The State failed to meet that burden.  We reverse the termination decision as to the mother and remand for further proceedings.  We find it unnecessary to address the remaining issues raised by the mother.

## II.    *Father*

The father contends (A) the State failed to prove the grounds for termination cited by the district court; (B) termination is not in the children's best interests; (C) the State failed to make reasonable efforts at reunification; and (D) the district court should have invoked exceptions to termination.

### A.    *Grounds for Termination*

As noted, the district court terminated the father's parental rights pursuant to several statutory grounds.  We may affirm the court's decision on any ground supported by the record.  *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).  We focus on section 232.116(1)(f) and (h).  Both provisions require proof the children could not be returned to the parent's custody at the time of the termination hearing.  *See* Iowa Code § 232.116(f)(4), (h)(4); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

The father testified he was housed at a residential correctional facility at the time of the termination hearing following his arrest on a probation violation for not having consistent employment.  He acknowledged the children were unable to live with him at the facility.  Accordingly, he was not in a position to have the children

returned to his custody at the time of the termination hearing. The State proved the elements of section 232.116(1)(f) and (h).

### B. Best Interests

The father next contends termination is not in the child's best interests. In assessing best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *A.S.*, 906 N.W.2d at 474. The father testified he was "four-eleven" and weighed "[a] hundred five." As discussed, the physician's report on the oldest child's small stature ruled out malnutrition as the cause and raised serious doubts about the diagnosis of malnutrition for the remaining children. It was also noteworthy that the father's older children from another relationship were returned to his home on a trial basis and the department case manager conceded the home "was deemed appropriate for the length of time that the children were in the home." Finally, the father expected an imminent release from the residential correctional facility, was employed, and exercised regular visitation with the children, to whom he was bonded. Without further investigation of the malnutrition issue, we conclude termination was not in the children's best interests. We reverse the termination decision as to the father and remand for further proceedings. We find it unnecessary to address the remaining issues he raises.

**REVERSED AND REMANDED ON BOTH APPEALS.**