**IN THE COURT OF APPEALS OF IOWA**

No. 24-1010
Filed December 18, 2024

**IN THE INTEREST OF J.C., K.C., and K.C.,**
**Minor Children,**

**D.C., Father,**
　　　Appellant.
_____


Appeal from the Iowa District Court for Polk County, Susan Cox, Judge.


The father appeals the termination of his parental rights to three children.
**AFFIRMED**.


Lisa K. Pendroy, Des Moines, for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney

General, for appellee State.

Erin E. Romar of Youth Law Center, Des Moines, attorney and guardian ad

litem for minor children.


Considered by Greer, P.J., and Buller and Langholz, JJ.

**GREER, Presiding Judge.**

The juvenile court terminated the father's parental rights to his children J.C., K.C., and K.C., who were then eight, seven, and six years old respectively, under Iowa Code section 232.116(1)(f) (2024).[1] The father appeals, arguing (1) the State did not prove the statutory ground for termination, in part because providing visits that included more than just his biological children constituted a failure to make reasonable efforts to reunify; (2) the parent-child relationships should be preserved because termination would be detrimental to the children; and (3) the court should have granted him six additional months to work toward reunification. Alternatively, the father argues that establishing a guardianship in the maternal grandfather in lieu of terminating his parental rights is in the children's best interests.

Following our de novo review, in which "we review both the facts and law, and adjudicate . . . anew" those issues properly preserved and presented, *In re T.A.L.*, 505 N.W.2d 480, 482 (Iowa 1993), we conclude there was clear and convincing evidence to support the termination of the father's parental rights and the best interests of the children require stability. We affirm the juvenile court's decision.

**Statutory Ground and Reasonable Efforts.** After a three-day hearing, the juvenile court terminated the father's parental rights to each of the three children under section 232.116(1)(f), which requires the following elements to be proved by clear and convincing evidence:

(1) The child is four years of age or older.

---

[1] The mother's rights to these children and two other children that have different fathers were also terminated. She is not involved in this appeal.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The father only challenges the fourth element. In somewhat of a concession, the father notes that the children could have been returned to him at the time of hearing or "within a reasonable time frame." But, reference to "at the present time" in the statute means at the time of termination hearing, so we limit our review to that question. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014). And, as part of this challenge, the father argues the State failed to make reasonable efforts to return the children to his custody. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) ("[T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination. . . . [Instead, t]he State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent.").

First, we consider whether the father preserved his reasonable-efforts complaint. The father asserts the Iowa Department of Health and Human Services (the department) failed to make reasonable efforts to reunify him with his children because, in spite of his requests to the contrary, his supervised visits included his three biological children and their two half-siblings. During his testimony at the second day of the termination hearing, the father claimed he asked the department to have visits with only his three children "a few times." Even assuming the father's

testimony is reliable,[2] alerting the department about an issue does not preserve error.  *See In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002) ("[V]oicing complaints regarding the adequacy of services to a social worker is not sufficient.  A parent must inform the juvenile court of such challenge.").  And the father did not complain about his visits including the other children to the juvenile court until the second day of the three-day hearing, when he made a formal motion for the visits to change.  This is too late to preserve error.  *See In re T.S.*, 868 N.W.2d 425, 442 (Iowa Ct. App. 2015) ("Complaints regarding services are properly raised 'at removal, when the case permanency plan is entered, or at later review hearings.' . . .  [W]e will not review a reasonable efforts claim unless it is raised prior to the termination hearing." (citations omitted)); *In re G.C.*, No. 21-1781, 2022 WL 246270, at *3 (Iowa Ct. App. Jan. 27, 2022) ("[T]he parent has a responsibility to object when appropriate changes can [still] be made.").  So we do not consider the father's reasonable-efforts challenge.

Still, we consider whether the State proved the children could not be returned to the father's custody at the time of the termination hearing.  While this family became involved in child-in-need-of-assistance proceedings in

---

[2] On the first day of the three-day termination hearing, the department case manager testified the father was asked on more than one occasion if he was okay with the visits including all five children and the father indicated he was.  At the second day of the hearing, the case manager testified the father raised the issue about having visits with just his three biological children after the first day of the termination hearing.  The father provided contradictory testimony, stating he asked the department for the visits with only his children "a few times."  The juvenile court found the father was not credible in his testimony at the termination hearing, ruling, "The Court previously found [the father's] testimony was not credible.  The Court continues to make that finding.  This is based upon his demeanor and inconsistent statements.  Also, [the father] repeatedly became escalated in his testimony.  He indicated an inability/unwillingness to comply with basic court directives."

September 2022 and the children were formally removed from parental custody that October,[3] the father did not start participating in services until July 2023 and visits a couple months later. While the father initially avoided completing any drug tests, when he began providing them in September 2023 they were positive for methamphetamine. Additionally, he admitted during his testimony at the termination hearing that he continued to use methamphetamine until December 31, 2023. A drug patch worn by the father from January 11–18, 2024, was positive for methamphetamine—there was contradictory testimony over what period that patch would test. While the father participated in and completed substance-use treatment from January to March 2024, and had results from a drug test completed in March that tested negative for all substances, the father's few months of sobriety is not enough to establish the children could be safely returned to his custody. *See In re J.B.*, No. 18-0696, 2018 WL 4361058, at *4 (Iowa Ct. App. Sept. 12, 2018) ("Short-term improvement on the eve of termination is not enough for the child to safely return."); *C.B.*, 611 N.W.2d at 495 ("[T]he changes in the two or three months before the termination hearing, in light of the preceding eighteen months, are insufficient."); *In re E.M.*, No. 16-1641, 2016 WL 6903519, at *2 (Iowa Ct. App. Nov. 23, 2016) (finding a three-month period of sobriety not enough time to demonstrate a consistent effort). And, while we hope the father internalizes the lessons he learned in his domestic-violence classes and mental-

---

[3] The department became involved with the family in December 2021 based on concerns regarding parental substance use and the father perpetrating domestic violence against the mother. Originally, the parents were offered services on a voluntary basis and the children began staying with the maternal grandparents as part of a safety plan.

health therapy, his inability to regulate his emotions while testifying, speaking with the case manager, and dealing with others he finds bothersome suggests there are still other issues preventing the father from providing the children a safe, stable home. So, the children could not be returned to the father's custody, and the State proved the statutory ground for termination.

**Exception to Termination.** The father argues termination of his rights would be detrimental to the children due to the closeness of the parent-child bond. *See* Iowa Code § 232.116(3)(c). While it is undisputed the father loves and wishes to preserve his relationship with the children, a parent's love for the child is not enough to prevent termination. *See In re D.W.,* 791 N.W.2d 703, 709 (Iowa 2010). Neither is the mere existence of a bond. *In re A.B.,* 956 N.W.2d 162, 169 (Iowa 2021). Rather, to prevent termination, the father has to establish that the children would be disadvantaged by termination such that it overcomes his inability to meet the children's needs. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) ("[T]he parent resisting termination bears the burden to establish an exception to termination."); *see also D.W.,* 791 N.W.2d at 709 ("Although it is clear that [the mother] loves her son, our consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the mother's] inability to provide for [the child's] developing needs."). The father has not done so.

**Additional Time.** Next, the father argues he should receive six more months to work toward reunification with the children. "[T]he juvenile court may deny termination and give the parent an additional six-months for reunification *only if* the need for removal 'will no longer exist at the end of the additional six-month

period.'" *In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021) (emphasis added) (quoting Iowa Code § 232.104(2)(b)). To give the father additional time, he must "show the impediments to placing [the children] with him will not exist in six months, [and] we must also consider whether the further delay is in [the children's] best interests." *Id.*

The department and juvenile court had been formally part of these children's lives for about eighteen months at the time of the termination hearing. During that time, the father went about a year without seeing the children and, during that same time period, did not take steps to address his mental-health, substance abuse, or domestic-violence issues. While the father took a lot of positive steps in the last few months before the termination hearing, many of those changes were still too new to know if the father could maintain them. The father argues that giving him additional time would allow him to prove that he can, but we conclude further delay is not in these children's best interests. *See In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) ("We have repeatedly followed the principle that the statutory time line must be followed and children should not be forced to wait for their parent . . . .").

**Guardianship.** In the alternative, the father asks us to establish a guardianship in the maternal grandfather in lieu of terminating his parental rights. See Iowa Code § 232.117(5) (allowing the court, after a termination trial, to not order the termination of parental rights but instead enter an order pursuant to section 232.104); *see also id.* § 232.104(2)(d)(2) (allowing the court to transfer guardianship of the child to an adult relative).

To establish a guardianship instead of terminating the father's parental rights, we must conclude that termination of the father's rights is not in the children's best interests. *See id.* § 232.104(4)(a). We cannot do that here. The maternal grandfather was completing the process to become eligible to adopt not just the father's children but also the other two half-siblings. Termination of the father's parental rights would likely allow all five siblings to be adopted by their family member, who has cared for them for more than two years and can provide them a safe forever home. This is in these children's best interests. *See In re J.E.*, 723 N.W.2d 793, 801 (Iowa 2006) (Cady, J. concurring specially) ("A child's safety and the need for a permanent home are now the primary concerns when determining a child's best interests."); *In re L.W.*, No 23-0326, 2023 WL 3861986, at *4 (Iowa Ct. App. June 7, 2023) ("Our legislature recognized that sibling relationships should be considered when making a determination of each child's best interests." (citing Iowa Code § 232.108)).

We affirm the termination of the father's parental rights.

**AFFIRMED.**