**In the Interest of B.F. and J.F., Minor Children,**

**C.F., Mother, Appellant.**

**No. 94–1187.**

Court of Appeals of Iowa.

Nov. 28, 1994.

Charles H. Jacobs, Dubuque, for appellant.

Bonnie J. Campbell, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., Judy Sheirbon, Asst. Atty. Gen., and Jean Becker, Asst. County Atty., for appellee-State.

Jennifer A. Clemens of Reynolds & Kenline, Dubuque, guardian ad litem, for minor children.

Considered by DONIELSON, C.J., and HAYDEN and CADY, JJ.

CADY, Judge.

Christine appeals the juvenile court's order terminating her parental rights to Jennifer and Brandon. On review, we reverse the juvenile court's order and find there is not clear and convincing evidence to support the termination.

Christine is the mother of Brandon, born March 10, 1989, and Jennifer, born December 16, 1987. Paul is the father of Brandon and Jennifer. His parental rights, however, were terminated due to abandonment.

Brandon and Jennifer came to the attention of the Iowa Department of Human Services (DHS) in January 1991 when DHS received a report of possible physical abuse, denied medical attention, and improper supervision. The county attorney subsequently filed a petition and an amended petition asserting the children were in need of assistance pursuant to Iowa Code sections 232.2(6)(e) (child needs medical treatment to cure a serious illness and parent is unwilling or unable to provide it), 232.2(6)(c)(2) (failure of the parent to exercise a reasonable degree of care in supervising the child), and 232.2(6)(n) (parent's mental capacity or condition results in child not receiving adequate care) (1993).

At the adjudicatory hearing on February 11 and March 11, 1991, the court found that Christine had struck her ten-year-old daughter, Julie, in the face on two occasions, that she often left Julie to baby-sit her younger siblings as well as her two younger cousins, and she had not sought immediate medical treatment when told the children might have lice. In addition, the court found Christine had been provided numerous services since 1988 without great success.

As a result of this hearing, the court adjudicated Brandon and Jennifer CINA pursuant to Iowa Code sections 232.2(6)(c)(2). The court continued the allegations that the children should be adjudicated CINA pursuant to Iowa Code section 232.2(n) pending a physical and mental examination of Christine. Accordingly, the court ordered Christine be examined to determine if she suffers from Huntington's Chorea, a fatal hereditary disease that causes deterioration of the brain with resulting loss of mental capacity and physical control.

After a review hearing in December 1991, the court continued the placement of the

children with Christine and ordered that Christine be provided with parent skill development through Alternative Treatment Associates (ATA) and the assistance of the Public Health Nurse and Homemaker Aid. The court noted that Christine was diagnosed with Huntington's Chorea.

In December 1992 and January 1993, child abuse investigations were conducted. The investigator found Jennifer and Brandon suffered cuts, bruises and abrasions from Christine's actions.

On January 27, 1993, an application for temporary removal was granted, and Brandon and Jennifer were placed in foster care.

After a dispositional hearing on April 21, 1993, the court found that Christine was incapable of providing for Brandon and Jennifer "primarily due to her disability" of Huntington's Chorea. Reports from her evaluation at the University of Iowa Hospitals stated her disease was in moderate progression and that she had moderate impairments in her memory, cognitive flexibility, speech, language, and fine motor control. Evidence of the two founded reports of physical abuse of the children was presented as well as evidence that both Brandon and Jennifer had special needs.[1] The court further found Christine had difficulty supervising the children, fell down on several occasions, and the children were unresponsive to her attempts to parent. The court noted Christine's cooperation with Lutheran Social Services and ordered the DHS to attempt expanded visitation through wrap-around and community services. The children were ordered to remain in family foster care.

In March 1994, the court ordered that all Christine's visits with the children take place in a secure environment such as a DHS office due to the discovery of Christine's plan to abduct the children. Christine and her sister planned to abscond with the children by locking the social worker in Christine's home during supervised visitation and escaping with the children out the back door. They then planned to drive to Christine's father's home in Texas. The plan was discovered after Christine relayed it to a furniture store employee.

After Brandon and Jennifer spent over twelve months in foster care, the State filed a petition for termination of Christine's parental rights over the children. Following the hearing in June 1994, the court found clear and convincing evidence that Christine's parental rights should be terminated pursuant to Iowa Code section 232.116(1)(e) (1993). The court's primary concern was Christine's inability to provide the children with a safe supervised environment and proper discipline. The court, however, found a strong bond between Christine and her children. It recommended an open adoption.

Christine appeals. She argues the district court erred in concluding there was clear and convincing evidence the children could not be returned to her care.

We review termination proceedings de novo. Iowa R.App.P. 4. Accordingly, we review both the facts and the law and adjudicate rights anew. *In re T.A.L.*, 505 N.W.2d 480, 492 (Iowa 1993). Although we give weight to the factual findings of the juvenile court, especially when considering the credibility of witnesses, we are not bound by them. *Id.*

Our paramount concern in termination cases is the best interests of the child. *In re L.L.*, 459 N.W.2d 489, 493 (Iowa 1990). In determining what is best for the child, we look to the child's long range and immediate interests. *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). The court gives primary consideration to the physical, mental, and emotional condition and needs of the child. *In re S.J.*, 451 N.W.2d 827, 830 (Iowa 1990). There is a rebuttable presumption that the best interest of a child is served when custody is left with the natural parents. *Id.*

Termination in this case was sought under Iowa Code section 232.116(1)(e). This section allows the court to terminate parental

---

1. Jennifer was later diagnosed as having attention deficit hyperactivity disorder (ADHD), reactive attachment disorder, pica, and mild mental retardation. She takes the medication Ritalin, to help control her ADHD. Brandon suffers from oppositional defiant disorder, has difficulty controlling his anger, and is obsessed with death, killing, and making threats.

rights where the child is four years of age or older, the child has been adjudicated CINA, the child has been removed from the physical custody of the parents for at least twelve of the last eighteen months, and there is clear and convincing evidence the child cannot be returned to the parents as provided in section 232.102.

The only element Christine challenges is whether the State has established by clear and convincing evidence that the children cannot be returned to her custody. Christine asserts because she suffers from Huntington's Chorea through no fault of her own, she should not lose association with her children, the children are emotionally attached to her, and they are stable in their present situation.

■ We have previously stated "mental disability, standing alone is not a sufficient reason for the termination of the parent-child relationship, but it is a contributing factor to the inability to perform duties of a parent." *In re A.M.S.*, 419 N.W.2d 723, 733–34 (Iowa 1988); *In re Wardle*, 207 N.W.2d 554, 563 (Iowa 1973). Thus, mental disability is a proper factor to consider in determining whether a child is neglected to the point where his or her interest and welfare require termination. *Id.*

The extent of Christine's disability and its effect on her ability to parent is made clear in the deposition testimony of Dr. Barbara Sullivan–Woodward. Dr. Woodward conducted a neuropsychological evaluation of Christine from November 1993 to January 1994. Her evaluation revealed Christine has a borderline range of intellectual functioning which has declined as a result of her disease. She went on to state Christine has significant brain dysfunction. Her executive functions that govern behavior, planning, monitoring, execution, integration, and flexibility are severely to moderately impaired. Her memory, concentration, and attention are also severely to moderately impaired. She also found Christine's visuospatial problem solving ability, concentration, social judgment, attention, and other motor functions had steadily declined since her previous evaluation by the University of Iowa Hospitals. She further opined, at Christine's current level of functioning she would have significant difficulty providing her children with food, clothing, shelter, development, and stimulation. It would be unlikely she could gain those skills in the future due to her psychological dysfunction. Finally, she testified, Christine would probably not be able to effectively and safely live independently within a few years.

We recognize Christine's inability to care for her children is largely due to the tragic onset of Huntington's Chorea. We also recognize returning Jennifer and Brandon to Christine's exclusive care may result in the children's fundamental needs being unmet. The record reveals Christine and her children have received extensive services since 1988. These included family therapy, parental skill development, protective homemaker services, family preservation, Lutheran Social Services, Visiting Nurses Association Services, and individual counseling. Christine has been cooperative with many of these services. Notwithstanding, she has made little progress toward the goal of providing her children with a safe, stable, and nurturing home.

According to the social service workers who observed Christine with the children, she was unable to set boundaries for the children and provide appropriate discipline. Christine also failed to recognize and caution the children regarding traffic and kitchen safety hazards. Furthermore, when social service workers pointed out these safety hazards Christine dismissed them stating, "the kids will be allright." The social service workers unanimously testified Christine is incapable of parenting the children on a day to day basis without twenty-four hour supervision.

Additionally, the evidence indicates the children's above average need for stability, nuturance, and discipline is met in their current foster home, school, and day care facilities. Both children have responded well to the highly structured environment, counseling, and positive parenting strategies they have received. Pediatric psychologist, Dr. Martha Gould, testified removing them from their current stable situation without hope of

a permanent placement would be detrimental.

In light of her illness and her children's special needs, Christine can not currently provide her children with the discipline and supervision they require. As her illness progresses, Christine's ability to care for the children will commensurately decline. Thus, we find Brandon and Jennifer cannot be returned to Christine's care.

We are confronted, however, with compelling evidence of a genuine bond between Christine and her children. Despite all the adverse evidence the record reveals Christine loves her children and they return her affection. Christine has consistently maintained all of her appointments for her supervised visitation. She frequently prepares snacks for the children, brings them gifts, and instigates activities such as baking and making crafts. The children also look forward to their visits with Christine and enjoy the time they spend with her. They do not seem to be adversely impacted by the lack of discipline exercised by Christine during visitation. Much of Christine's current parenting defects relate to her tragic and crippling disease, not her purposeful neglect.

We believe that under this record the children's best interest is not served by a termination. We do not dismiss the termination request lightly. We have carefully considered the possible outcomes of granting termination at this time. The children's foster family is willing to keep the children until a permanent home is located but they will not adopt them. Also, although the social worker testified they are adoptable, no prospective parents have expressed a desire to adopt the children. Moreover, termination is an outcome of last resort. Legally ending a relationship with an ineffectual but loving and caring mother, without being reasonably assured of any hope of permanency with an adopted family, is of doubtful advantage to these children. *See In re S.J.*, 451 N.W.2d at 832. This case presents extraordinary facts which we believe compel our result.

We remand to the juvenile court to issue an order directing placement in long-term foster care pursuant to Iowa Code section 232.104(2)(d)(4). The court will review this order annually as mandated by section 232.104(2), (6) or more often as needed to ascertain if the best interest of the children are being maintained. We do not rule out further termination proceedings if subsequent events make them advisable. These occurrences include changes in Christine's parenting ability, the unavailability of the current foster home, the availability of prospective adoptive parents, a showing that long-term foster care is adversely affecting the children, or other similar circumstances which impact the best interests of the children.

**REVERSED AND REMANDED.**