# IN THE COURT OF APPEALS OF IOWA

No. 14-2034
Filed February 11, 2015

**IN THE INTEREST OF L.C.,**
**Minor Child,**

**C.C., Father,**
Appellant.

_____

Appeal from the Iowa District Court for Marion County, Steven W. Guiter, District Associate Judge.

A father appeals the termination of his parental rights to his eighteen-month-old daughter. **REVERSED AND REMANDED.**

Blake D. Lubinus of Lubinus Law Firm, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, and Edward Bull, County Attorney, for appellee

Dawn Bowman of Bowman Law Office, Pleasantville, for mother.

Bryan Webber, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, J.**

A father appeals an order terminating his parental rights to his eighteen-month-old daughter, L.C. He challenges the ground for termination, contends termination would be detrimental to the child because of their close relationship, and asks for an additional six months to work toward reunification.

Because the record shows the father has developed a strong bond with his daughter during their visits, we conclude the juvenile court should have exercised its discretionary power under Iowa Code section 232.116(3) (2013) to forbear termination at this time. Because the father has started to address his substance abuse issues and has resolved his pending criminal case, we concluded it would be appropriate to grant him an additional six months to engage in the services necessary to offer L.C. a stable home.

## I.    Background Facts and Proceedings

L.C. was born in July 2013. Her father, Clifford, testified his daughter lived with him for about three weeks after her birth. L.C.'s mother, Tiffany, had a substance abuse problem and was unable to care for the baby. When she was just one month old, L.C. was removed from her mother's care. Clifford was not deemed appropriate for placement at the time of removal.[1] The Department of Human Services (DHS) placed L.C. in foster care instead.

On October 2, 2013, the juvenile court adjudicated L.C. as a child-in-need-of-assistance (CINA) under Iowa Code sections 232.2(6)(c)(2) and 232.2(6)(n) due to the mother's substance abuse and mental health issues and concerns

---

[1] At the time of removal, Clifford's paternity was not established.

about the father's limited contact with the child and his criminal history and behavior.

As part of the case permanency plan developed by the DHS, both parents were directed to address their substance abuse issues. On October 30, 2013, the court returned L.C. to Tiffany's care on the condition they live at the House of Mercy, which offers transitional housing and addiction services. Although the child was not in his care, the court ordered Clifford to undergo a hair stat test to determine if he was using drugs.

In January 2014, Tiffany left the House of Mercy with L.C. and turned up at the Family Violence Center in an "altered mental state." The juvenile court again removed L.C. from Tiffany's care and the child has been in foster care since that time.

Meanwhile, Clifford participated in some DHS services, but questions about his drug use and criminality persisted. He has engaged in visits with his daughter since October 2013 and they have gone well. As a DHS report from April 2, 2014, states: "Cliff and [L.C.] have great visits. Cliff is able to care for [L.C.] and provides for her during the visits. It is clear that there is a bond between Cliff and [L.C.]. Cliff is consistent with his visits."

In February 2014, Clifford underwent a substance abuse assessment; although he reported recent marijuana use, the evaluator did not recommend any treatment. In March 2014, Clifford finally complied with the November 2013 order to have his hair tested for the presence of drugs; the test came back positive for marijuana and opiates.

Then, in June 2014, the residence where Clifford was staying with his mother and brother was the target of a search warrant. Law enforcement found marijuana; candy laced with THC, the active ingredient in marijuana; and a sawed-off shotgun. As a result of the search, on August 13, 2014, Clifford was arrested at his mother's house and charged with possession with intent to deliver marijuana and failure to affix a drug tax stamp.[2]

While facing those criminal charges, on August 21, 2014, Clifford underwent a second substance abuse evaluation. He told the evaluator he last used marijuana on August 12, 2014, the day before his arrest, and had been using on an almost daily basis before that time. He also reported using a combination of medications, including Vicodin, and illegally obtained opiates to treat a back injury. The father admitted first trying marijuana when he was just seven or eight years old and using regularly by the time he was seventeen or eighteen years old. This time, the evaluator recommended intensive outpatient therapy. Clifford agreed to that recommendation and was scheduled to start his treatment sessions in October 2014. The father also completed anger management with Eyerly Ball Community Mental Health Services.

---

[2] At the termination of parental rights hearing, the juvenile court took judicial notice of Clifford's criminal case and based its decision, in part, on the uncertainty of the father's future because he faced two felony charges. Under Iowa Rule of Evidence 5.201(f), we find it appropriate to take judicial notice of the resolution of that case. The father entered a guilty plea to the controlled substance violation on November 20, 2014, and received a deferred judgment and two years' probation on January 13, 2015. The district court dismissed the tax stamp charge.

The State filed its petition to terminate parental rights on July 21, 2014, between the date when police executed the search warrant at the residence of Clifford's mother and the filing of the criminal charges against him.

The juvenile court held a combined permanency and termination of parental rights hearing on October 8, 2014. At the hearing, the court heard testimony from a DHS case worker, who recommended termination. Clifford testified he wanted a chance to be the primary caregiver for his daughter and believed he could do so if given six more months to address his substance abuse issues. Clifford also offered testimony from his current FSRP (family safety risk and permanency) worker, who confirmed the father always came prepared, showed positive parenting skills during the visits with L.C., and L.C. had developed a strong attachment to him.

On December 4, 2014, the juvenile court issued an order terminating the parental rights of L.C.'s mother, Tiffany,[3] and her father, Clifford. Clifford now appeals.

## II. Standard of Review and Legal Principles

We review termination proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). When so doing, "[w]e review both the facts and the law, and we adjudicate rights anew." *In re K.N.*, 625 N.W.2d 731, 733 (Iowa 2001) (internal quotation marks omitted). We give weight to the juvenile court's factual findings, but are not bound by them. *In re D.S.*, 806 N.W.2d 458, 465 (Iowa Ct. App. 2011).

---

[3] The mother voluntarily consented to termination and is not a party to this appeal.

The State bears the burden to prove the grounds for termination by clear and convincing evidence. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of the conclusions of law drawn from it. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

In determining whether a parent's rights should be terminated under chapter 232, a juvenile court "follows a three-step analysis." *D.W.*, 791 N.W.2d at 706. First, the court must "determine if a ground for termination under section 232.116(1) has been established" by clear and convincing evidence. *Id.* If the court finds a ground for termination, the second step is deciding if termination is in the child's best interests under the framework in section 232.116(2). *Id.* at 706–07. Finally, if the court finds "the statutory best-interest framework supports termination of parental rights," the court must consider "if any statutory exceptions set out in section 232.116(3) should serve to preclude termination of parental rights." *Id.* at 707.

"[T]ermination is an outcome of last resort." *In re B.F.*, 526 N.W.2d 352, 356 (Iowa Ct. App. 1994).

### III.   Analysis of Father's Challenges to Termination

Clifford first argues the State did not prove the ground for termination by clear and convincing evidence. He also claims the juvenile court erred in not finding an exception precluding termination under section 232.116(3). Finally, he asks for an additional six months to work toward reunification. We address each argument in turn.

**A.    Ground for termination**

The juvenile court based its termination of the Clifford's parental rights to L.C. on Iowa Code section 232.116(1)(h).  This section provides:

> The court finds that all of the following have occurred:
>     (1) The child is three years of age or younger;
>     (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96;
>     (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days;
>     (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h) (2013).

After a de novo review of the record, we believe the State proved all the elements of subsection (h).  At issue is the fourth element, the ability to safely return the child to the custody of the father at the time of the termination hearing.  *See A.M.*, 843 N.W.2d at 111.  At the time of the hearing, Clifford had not yet started his intensive outpatient substance abuse treatment.  He was living with his mother, L.C.'s grandmother, but that residence was not a long-term housing option.  Clifford testified if L.C. was returned to his custody, he would move to a house he shares with a friend in Des Moines, but the DHS did not have current information on the suitability of that arrangement.  And although Clifford had requested additional visitation with L.C., the DHS had not transitioned him to unsupervised visits or visits lasting longer than a few hours.  Finally, although he has since received a deferred judgment in the pending criminal case, at the time of the hearing, Clifford was facing potential incarceration for his criminal conduct.

Given this record, we agree with the juvenile court's decision that L.C. could not have been safely returned to Clifford's custody at the time of the termination hearing. His unstable housing and unresolved substance abuse issues were enough to prove subparagraph (h)(4) by clear and convincing evidence.

**B.    Mitigating Factor**

Clifford claims the juvenile court erred by not declining to terminate based on section 232.116(3)(c). He asserts severing the parent-child relationship would be harmful to L.C. because of their close bond. We find merit in the father's argument.

In its findings of fact, the juvenile court recognized: "The bond between [L.C.] and her father is described as strong." But the court immediately pivoted to its concerns about Clifford's ongoing substance abuse. In its conclusions of law, the court included a boilerplate paragraph quoting the entirety of section 232.116(3), but did not specifically analyze subsection (c) concerning any detrimental effect L.C. might suffer from losing the close relationship with her father.

The record supports the existence of a special connection between Clifford and L.C. Clifford testified L.C. is always excited to see him. His claim concerning the closeness of their relationship is corroborated by the DHS worker who recognized an attachment between the father and L.C. It is also bolstered by glowing reports filed by the FSRP worker. The worker testified there was a strong bond with the father. The worker testified the father does not miss visits;

he is on time, comes prepared with a diaper bag, and is very engaged with L.C. The reports also indicate Clifford is able to attend to L.C.'s needs at the visits, including feeding and changing. The worker testified L.C. "rarely wants to go to anybody else or spend time with anybody else [but him]." L.C. only cries at the end of visits when the father places L.C. in the car.

The father also called the FSRP worker to testify at the termination hearing. She testified L.C. was always very excited to see her father and only wanted him to hold her during their visits. Although her grandmother and the FSRP worker were present, Clifford was the person L.C. looked to for comfort during the supervised visits. The worker also reported that L.C., who was normally a very cheerful child, would cry and become distressed when she had to leave her father at the end of the sessions. This record is sufficient for us to appreciate the closeness of the relationship between father and daughter.

The record might have been even stronger, but as Clifford's attorney was asking the FSRP worker to discuss how L.C. would react to being separated from her father, the county attorney objected to the question as calling for "speculation and beyond the scope of the witness's expertise." The county attorney voir dired the witness about her credentials, pointing out she did not have a postgraduate degree as a therapist nor had any interaction with the L.C. outside the visitation.

The juvenile court ultimately sustained the objection. While the evidentiary question is not raised in this appeal, we nevertheless are troubled by the State's adversarial treatment of the FSRP worker and the juvenile court's unwarranted limitation on the father's ability to prove the detrimental impact of

termination under section 232.116(3)(c). The FSRP worker consistently supervised the interaction between the father and L.C. during visits and, accordingly, had one of the best vantage points to form an opinion on how separation would impact L.C. In numerous cases, the State relies on FSRP workers to give their opinions on the propriety of terminating parental rights. And our supreme court has found it "significant" when "the third-party service providers" have expressed their belief that a child could not be safely returned to her parents at the time of trial. *See A.M.*, 843 N.W.2d at 112. In this case, we are persuaded by the FSRP worker's opinion concerning the significant bond between the child and her father.

We recognize the closeness between father and daughter does not automatically trump the statutory ground for termination. *See In re Z.H.*, 740 N.W.2d 648, 652 (Iowa Ct. App. 2007) (describing strong bond between parent and child as mitigating factor, but not overriding consideration). At the same time, the legislature would not have included subsection (3)(c) if a close relationship could never be the incentive for a court to forbear terminating parental rights.

We also recognize Clifford's efforts to address his substance abuse issues come at the eleventh hour. *See C.B.*, 611 N.W.2d at 495 (noting mother showed "almost complete lack of cooperation with DHS" for eighteen months and waning interest in her children before entering drug treatment a month before hearing). But his imperfect progress can be explained, if not excused. His first substance abuse evaluation did not recommend treatment and his lack of insurance posed

an obstacle to seeking therapy on his own. But the bottom line is that Clifford has been vigilant in visiting his daughter and has created a strong bond with her despite not living in the same household since she was three weeks old. When we review the record with fresh eyes, we find it would be detrimental to this eighteen-month-old child to end that special attachment at this point in time. We find termination is precluded by section 232.116(3)(c).

### C.     Additional time

The father argues he should have an additional six months to work toward reunification with L.C. He asserts after that postponement, termination will not be necessary. *See* Iowa Code § 232.104(2)(b). "[T]o continue placement for six months, the statute requires the court to make a determination the need for removal will no longer exist at the end of the extension." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005). We agree additional time is appropriate.

The juvenile court accepted the testimony of the DHS worker that Clifford's pending criminal charges provided a compelling reason to terminate. But as explained above, the father achieved a favorable disposition in his criminal case. If he can successfully complete probation, he will not have a conviction entered on his record. Under these new circumstances, Clifford has a greater likelihood of eliminating the need for removal if given a brief extension.

During this reprieve, the father must achieve two primary goals: obtain suitable housing and address his substance abuse issues. We understand tackling his addiction may be an uphill battle given his long history of marijuana use. But commitment to his intensive outpatient therapy will be essential if he

hopes to become a stable, full-time parent to L.C. We view Clifford's dedication to meaningful visits with his daughter as a good indicator that additional time will allow for reunification.

**REVERSED AND REMANDED.**