**IN THE COURT OF APPEALS OF IOWA**

No. 15-0655
Filed October 14, 2015

**IN THE INTEREST OF J.W.,**
**Minor Child,**

**A.W.,**
        Petitioner-Appellee,

**E.D., Mother,**
        Respondent-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Karen Romano, Judge.

A mother appeals an order terminating her parental rights in a private termination action.  **AFFIRMED.**

Molly E. Alley of Oliver Gravett Law Firm, P.C., Windsor Heights, for appellant.

Mark A. Simons of Simons Law Firm, P.L.C., West Des Moines, for appellee.

Jeffrey D. Norris of Norris Law Firm, P.L.L.C., Des Moines, guardian ad litem for minor child.

Heard by Vaitheswaran, P.J., Mahan, S.J.,* and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**MAHAN, Senior Judge.**

A mother, Elizabeth, appeals an order terminating her parental rights in a private termination action brought by Adrienne, who seeks to adopt the child. We conclude the court properly determined Adrienne had standing as a "prospective parent" to file a petition to terminate the parental rights of the child's biological mother. We conclude there is sufficient evidence in the record to show Elizabeth abandoned the child. We determine termination of Elizabeth's parental rights is in the child's best interests. We affirm the decision of the juvenile court terminating Elizabeth's parental rights pursuant to Iowa Code chapter 600A (2013).

### I. Background Facts & Proceedings.

Ronald and Elizabeth are the parents of J.W., who was born in 2001. Ronald and Elizabeth were never married. Ronald lived with Adrienne, and when J.W. was in his care, Adrienne assisted in J.W.'s care. Ronald and Elizabeth shared J.W.'s care until 2005, when Ronald began caring for him on a full-time basis. Elizabeth had very little visitation with J.W. On one visit she did not return J.W., but took him to Maryland, where he was subjected to physical abuse. Ronald and Adrienne flew to Maryland to retrieve J.W. Elizabeth later moved back to Iowa.

Ronald filed a petition to establish paternity. A paternity decree was issued on October 16, 2007, placing J.W. in the joint legal custody of Ronald and Elizabeth, with Ronald having physical care. Elizabeth was granted visitation

and ordered to pay child support of $263.26 per month.[1] The decree noted Elizabeth's visitation "has been sporadic and/or nonexistent."

Elizabeth has had minimal contact with J.W. since the paternity decree was filed. She went to Ronald and Adrienne's home on one occasion in 2009 and spoke to Adrienne; Ronald and J.W. were not home at the time. Ronald testified he and J.W. ran into Elizabeth by chance out in public about three times, "and she just blows by like it's nothing."

Ronald and Adrienne separated in 2010, and Ronald moved in with his mother. Ronald and Adrienne continued to cooperatively parent J.W. J.W. spends the night at Adrienne's house, and she takes him to school in the morning then goes to work. When J.W. gets out of school, he goes to Ronald's home, who works a night shift and is home in the afternoon. When Adrienne gets off work in the evening, she picks up J.W. and takes him to her home.

Elizabeth filed a motion on July 3, 2012, seeking a reduction of her child support obligation. The motion states, "I Elizabeth . . . have not seen [J.W.] for the past 4 years now due to I do not know where they live. Ronald can call me but never let me see [J.W.] or where they live." The motion, however, correctly lists Ronald's address, which at that time was his mother's address. Ronald moved to a different address in September 2012. After filing the motion, Elizabeth did not follow through on her request to reduce child support.

On October 22, 2014, Adrienne filed a petition seeking to terminate Elizabeth's parental rights under Iowa Code chapter 600A. The petition states

---

[1] Elizabeth is current in her child support obligation. She is employed, and her child support payments are taken out of her paycheck.

Adrienne is the child's "primary caretaker and prospective adoptive parent." She alleged Elizabeth had abandoned the child, pursuant to section 600A.8(3)(b).

A termination hearing was held on February 19, 2015. The court raised the issue of whether Adrienne had standing to file a petition to terminate Elizabeth's parental rights under chapter 600A. Adrienne claimed to be a "prospective parent" under section 600A.5(1)(a). Elizabeth testified she attempted to exercise visitation with J.W. on multiple occasions but had been barred from doing so by Ronald's and Adrienne's conduct. She stated they would not respond to her telephone calls and when she went to their homes they were not there. Outside the presence of the parties J.W. testified he did not feel like he had any relationship at all with Elizabeth. He stated that when he ran into her by chance in public, "I think some of the time she wouldn't even recognize me." He stated he wanted to be adopted by Adrienne because "She's always been there for me."

The court issued a ruling on March 30, 2015. It found Adrienne had standing to bring the termination action as a prospective parent because she intended to adopt J.W. The court determined Elizabeth had abandoned J.W. within the meaning of section 600A.8(3)(b) because she had not maintained substantial and continuous or repeated contact with him, even though she was physically and financially able to do so. The court found Elizabeth's claims she had attempted to have visitation with J.W. were not credible. The court further concluded termination of Elizabeth's parental rights was in J.W.'s best interests. The court terminated Elizabeth's parental rights and appointed Adrienne as a guardian for the child. Elizabeth now appeals.

## II. Standard of Review.

Our review in matters pertaining to termination of parental rights under Iowa Code chapter 600A is de novo. *In re D.E.E.*, 472 N.W.2d 628, 629 (Iowa Ct. App. 1991). In cases in equity, we give weight to the factual findings of the district court, especially considering the credibility of witnesses, but are not bound by them. Iowa R. App P. 6.904(3)(g). In termination proceedings, our paramount consideration is the best interests of the child. Iowa Code § 600A.1.

## III. Standing.

Elizabeth first claims Adrienne did not have standing to bring an action under chapter 600A to terminate her parental rights. She contends the court improperly interpreted the term "prospective parent." Elizabeth asserts the term "prospective parent" means a biological parent whose child has not yet been born. Under this definition, Adrienne would not be considered J.W.'s prospective parent.

Iowa Code section 600A.5(1) provides:

> The following persons may petition a juvenile court for termination of parental rights under this chapter if the child of the parent-child relationship is born or expected to be born within one hundred eighty days of the date of the petition filing:
> a. A parent or prospective parent of the parent-child relationship.
> b. A custodian or guardian of the child.

In chapter 600A, "'a parent or prospective parent'" may petition a juvenile court to terminate parental rights." *In re S.A.J.B.*, 679 N.W.2d 645, 648 (Iowa 2004); *see also Crowell v. State Public Defender*, 845 N.W.2d 676, 679 n.1 (Iowa 2014) ("[T]he only parties that may initiate a termination proceeding under Iowa Code chapter 600A include a parent, prospective parent, custodian, and guardian.").

In chapter 600A, parent means "a father or mother of a child, whether by birth or adoption." Iowa Code § 600A.2(14). The terms "custodian" and "guardian" are also defined for purposes of chapter 600A, while there is no definition for "prospective parent." *See id.* § 600A.2(6), (8). The term "prospective parent" is also used in section 600A.6B in discussing the responsibility of a party to pay court-appointed attorney fees. 2014 Iowa Acts ch. 1038, § 4.

"If the legislature has not defined words of a statute, we may refer to prior decisions of this court and others, similar statutes, dictionary definitions, and common usage." *State v. Romer*, 832 N.W.2d 169, 179 (Iowa 2013). A dictionary definition of "prospective" is "Effective or operative in the future . . . Anticipated or expected; likely to come about." Black's Law Dictionary 1417 (10th ed. 2014). "Prospective" has also been defined as "concerned with or relating to the future: effective in the future." Webster's Third New Int'l Dictionary 1821 (2002).

In *Klobnock v. Abbott*, 303 N.W.2d 149, 150 (Iowa 1981), a husband, who had married a mother of a child, filed a petition seeking to terminate the parental rights of the child's biological father so he could adopt the child. The supreme court stated the husband "had standing to bring the termination action as a prospective parent and as stepparent-custodian of the child." *Klobnock*, 303 N.W.2d at 151 (citing Iowa Code § 600A.5(1), .2(6), .2(8)). The term "prospective parent" has been used in other cases to mean a parent seeking to adopt a child. *See In re H.N.B.*, 619 N.W.2d 340, 345 (Iowa 2000) (noting the ability of prospective parents of children to maintain their heritage and culture

was a factor to be considered in future adoption proceedings); *In re L.B.T.*, 318 N.W.2d 200, 201 (Iowa 1982) (noting the age and education of prospective parents was a factor in considering competing petitions to adopt a child); *In re B.F.*, 526 N.W.2d 352, 356 (Iowa Ct. App. 1994) ("[A]lthough the social worker testified they are adoptable, no prospective parents have expressed a desire to adopt the children."); *In re C.L.C.*, 479 N.W.2d 340, 344 (Iowa Ct. App. 1991) (quoting a trial court ruling using the term "prospective parents" in relation to parties seeking to adopt children).

We conclude, under the unique facts of this case, the court properly determined Adrienne was a prospective parent because she expected or anticipated becoming J.W.'s parent by adoption in the future. There can be no dispute she was the putative mother of J.W. and has been in his life for a very long time. As a prospective parent, she had standing to file a petition to terminate the parental rights of the child's biological mother. *See* Iowa Code § 600A.5(1); *Klobnock*, 303 N.W.2d at 151.

### IV. Abandonment.

Elizabeth contends there is insufficient evidence in the record to show she abandoned J.W., within the meaning of section 600A.8(3)(b). She points out she has consistently provided financial support for the child. She acknowledges she "has not seen or spoken to J.W. in some time," but states Ronald and Adrienne prevented her from exercising visitation or having contact with the child.

Section 600A.8(3)(b) provides:

> If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated

contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:

    (1)    Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.

    (2)    Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.

    (3)    Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

The legislature has defined the phrase "to abandon a minor child" to mean

a parent, putative father, custodian, or guardian rejects the duties imposed by the parent-child relationship, guardianship, or custodianship, which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child.

Iowa Code § 600A.2(19). "Parental responsibility demands 'affirmative parenting to the extent it is practicable and feasible under the circumstances.'" *In re G.A.*, 826 N.W.2d 125, 130 (Iowa Ct. App. 2012) (citation omitted). Where a parent having physical care of the child has prevented the other parent from exercising visitation, the noncustodial parent is required to maintain regular communication with the child or the child's custodian. Iowa Code § 600A.8(3)(b)(2); *G.A.*, 826 N.W.2d at 130.

There is clear and convincing evidence in the record to show Elizabeth has not maintained substantial and continuous or repeated contact with J.W. At the termination hearing Elizabeth testified she had truthfully stated in her 2012 motion that she had not seen J.W. for the past four years. She also stated that from the time she filed the motion in 2012 until the date of the termination hearing

in February 2015 she had not seen J.W. except for one occasion when she ran into him by chance at a barber shop.

The court did not find credible Elizabeth's testimony that she had continuously been attempting to contact Ronald or J.W. Adrienne testified the only contact she ever had with Elizabeth was in 2009, but Ronald and J.W. were not home on that occasion. She testified she and Ronald had never done anything to obstruct Elizabeth's visitation. Ronald testified that Elizabeth had never contacted him after the paternity decree was filed. He stated he had attempted to contact Elizabeth through social media and by calling her, but got no response. He also testified he had not done anything to prevent Elizabeth from seeing J.W.

We conclude there is sufficient evidence in the record to show Elizabeth abandoned J.W. The evidence shows she rejected the duties imposed by the parent-child relationship and had not even made a marginal effort to communicate with the child. *See* Iowa Code § 600A.2(19).

**V. Best Interests.**

Elizabeth asserts termination of her parental rights is not in the child's best interests. She again points out she has provided financially for the child. She claims she has maintained a continued interest in the child. She states J.W. should be able to have a relationship with her and her other children, who are his half-siblings.

Our paramount consideration in termination proceedings under chapter 600A is the best interests of the child. Iowa Code § 600A.1. Furthermore,

The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent. In determining whether a parent has affirmatively assumed the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life.

*Id.*

On our de novo review of the record, we conclude termination of Elizabeth's parental rights is in J.W.'s best interests. The record shows she has not demonstrated a continued interest in the child or made a genuine effort to maintain communication with him. Years have gone by when Elizabeth has not attempted to contact J.W. or Ronald. She was aware of where he attended school, but made no effort to monitor his academic progress. Furthermore, Elizabeth has not established and maintained a place of importance in the child's life. J.W. stated that when he and Ronald ran into Elizabeth by chance he was not even sure she knew who he was. He stated he did not feel he had any relationship at all with her.

We affirm the decision of the juvenile court terminating Elizabeth's parental rights pursuant to chapter 600A.

**AFFIRMED.**