# IN THE COURT OF APPEALS OF IOWA

No. 19-1293
Filed November 6, 2019

**IN THE INTEREST OF M.M. and C.M.,**
**Minor Children,**

**I.M., Mother,**
        Appellant,

**C.M., Father of M.M.,**
        Appellant.

_____

Appeal from the Iowa District Court for Buena Vista County, Mary L. Timko, Associate Juvenile Judge.

The mother and father separately appeal the termination of their parental rights to their respective children. **REVERSED ON BOTH APPEALS AND REMANDED.**

Lori J. Kolpin of Kolpin Law Firm, P.C., Aurelia, for appellant mother.

T. Cody Farrens of Fankhauser, Farrens & Rachel, P.C., Sioux City, for appellant father.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Lisa K. Mazurek of Miller, Miller, Miller, P.C., Cherokee, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., Greer, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**BLANE, Senior Judge.**

The mother of C.M. and M.M. and the father of M.M. separately appeal the termination of their parental rights to their respective children.[1]  The mother challenges the statutory grounds relied upon by the juvenile court for termination, argues the State failed to make reasonable efforts to reunify her and the children, and maintains we should forgo termination because of the closeness of the parent-child bond.  The father challenges the statutory grounds relied upon by the juvenile court and maintains termination of his rights is not in M.M.'s best interests.  In the alternative, both parents request additional time to work toward reunification with their respective children.

Because of our ruling on de novo review, laid out below, we find it necessary to address only the final issue.  *See In re K.R.*, No. 19-0090, 2019 WL 1486612, at *1 (Iowa Ct. App. Apr. 3, 2019) (declining to consider the three-step analysis of Iowa Code section 232.116 for termination of parental rights when the court deemed an extension of time was appropriate).

**I. Background Facts and Proceedings.**

This family came to the attention of the Iowa Department of Human Services (DHS) in August 2018 after the mother, while at the hospital giving birth to M.M., admitted using methamphetamine within the previous twenty-four hours.  DHS learned the mother had also tested positive for methamphetamine at a prenatal visit in March 2018 and that the father has a history of drug-related criminal convictions.  The mother had been living with the maternal grandparents off and

---

[1] The identity of C.M.'s biological father is unknown, but the parental rights of any putative fathers were terminated.  No father of C.M. appeals.

on, while C.M. had generally lived with them since her birth in early 2016. The grandparents were able and willing to begin caring for M.M. as well, and both children were placed in their care.

About a week later, the father was arrested and charged with domestic abuse assault. It was alleged he spit at and struck the mother in the face. A no-contact order was entered, and the mother moved into a shelter for those escaping domestic violence. The parents' separation was short-lived. Each was charged with violating the no-contact order before mid-September, when the mother sent a letter to the court asking that both the no-contact order and the domestic abuse assault charge be dismissed.

Meanwhile, the father was arrested and charged with operating while intoxicated (OWI) on September 2 and again on October 14.

The mother entered inpatient residential treatment for substance abuse on October 18. She admitted to service providers that she used cocaine, methamphetamine, marijuana, and alcohol between the time the children were removed from her care and when she entered the treatment facility.

The mother completed the entire twenty-eight-day program. Upon her discharge in mid-November, she was allowed to move into the home of the maternal grandparents and live with her children.

The father avoided all contact with DHS from October 8 until November 23. When the father completed a substance-abuse evaluation in late November, he was diagnosed with alcohol use disorder (moderate). It was reported the father had lost control over the amount of alcohol he drank and the duration of his use.

The father was told to participate in outpatient services for his substance abuse and to work on his anger-management skills.

From late November until late March, the mother participated in both substance-abuse and mental-health treatment in the community. She also obtained employment, working at a local grocery store approximately thirty hours per week. The father began seeing a dual-diagnosis counselor for both issues with anger and substance abuse, and he attended substance-abuse meetings locally. The father was hired for a full-time job, which he continued to hold through the time of the termination hearing, and both parents worked toward paying down their fines for their various criminal charges.

Then in March 2019, after several months of sobriety, the mother relapsed on methamphetamine. When she was asked to drug test on March 20, she reported it would be positive for alcohol and methamphetamine. The next day, the mother was arrested for OWI; she admitted to the arresting officer that she was eight or nine weeks pregnant.

Almost immediately after, the mother voluntarily entered long-term residential inpatient treatment. The mother remained in this treatment at the time of the termination hearing, which took place on June 5 and 24. She testified her tentative discharge date was August 1 but believed she might remain in treatment until October, noting she was only in the first of four phases of treatment, in order to achieve long-term sobriety. At the termination hearing, the mother was able to verbalize what she had learned and how her thought process was changing. She also testified that the treatment center would allow her children to come stay with her and had moved her into a larger room for that purpose. In the meantime, she

had been helping to provide childcare to other women's children in the facility, and there was no indication of any concerns with the care she provided.

As he had repeatedly reported, the father testified his sobriety date was October 15, 2018. Although the father missed some drug and substance tests after that date, he did not have any positive tests after it. The father was continuing to see his counselor for help with his substance-abuse and anger issues. The father admitted he showed some reticence in discussing domestic violence with the counselor, but he signed up for a domestic-violence class in between the two days of the termination hearing and was set to begin it in late June. The father had maintained his full-time employment, and a letter admitted into evidence from his employer praised the father's "great attitude" and noted the father did not have any issues with attendance or readiness to work.

Despite the prior history of domestic abuse in their relationship, both the mother and father were working on this issue, continuing their relationship, and planning to marry.

The juvenile court terminated the mother's parental rights to C.M. and M.M. pursuant to Iowa Code section 232.116(1)(d), (h), (i) and (*l*) (2019). The court terminated the father's parental rights to M.M. under section 232.116(1)(d), (h), and (i). Both parents appeal.

**II. Standard of Review.**

We review termination proceedings de novo. *In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011). As always, in child-welfare cases, our paramount concern is the best interests of the children. *In re D.S.*, 806 N.W.2d 458, 465 (Iowa Ct. App. 2011).

**III. Discussion.**

Both parents dispute that termination of their parental rights was proper under the framework of Iowa Code section 232.116.  In the alternative, they both contend they should have been given more time to reunify with their respective children pursuant to section 232.104(2)(b).

We agree with the juvenile court that it would have been premature to return the children to the parents' full-time care at the time of the termination hearing. The father was just getting ready to start his course on domestic violence, and the mother, though in a secured facility and with a number of months of sobriety, had never parented the two children full-time before.  But these parents made strides in the year DHS was involved with their lives.  The father had achieved eight months of sobriety from alcohol, was working full-time—and by all accounts was an excellent employee, and was continuing to see his counselor for help with issues involving substance abuse and anger.  His issues were not completely resolved, and we understand the concern that he was abstaining from alcohol rather than recovering from his addiction, but six more months will give the father time to establish that he has made serious, substantial changes in his life.  *See* Iowa Code § 232.104(2)(b) (allowing the court to delay permanency for six months when the court can name "specific factors, conditions, or expected behavioral changes" that establish "the need for removal of the child from the child's home will no longer exist" at the end of the extension).

Similarly, the mother has voluntarily maintained her place in a treatment facility for a number of months.  She recognized the need for additional treatment and remained committed to completing it, even when DHS refused to allow the

children to spend overnights with the mother. The treatment facility has taken steps for the mother to care for her children while in treatment and supports the children spending time in the facility with the mother. There have been no concerns with the care the mother has provided for the children of other mothers in treatment. Based on a letter the mother admitted into evidence, the mother will be able to regain employment at the grocery store after she completes her treatment. *See In re R.M.*, No. 12-1886, 2013 WL 264326, at *2 (Iowa Ct. App. Jan. 24, 2013) (granting mother's request for six-month extension where there were no safety concerns regarding the mother's parenting and the mother had established sobriety and obtained employment). Additionally, the maternal grandparents remain supportive of the mother, and, based on their ongoing support and their past behavior, it seems she would be welcome in their home after she leaves treatment if she is not immediately able to maintain her own home. Six additional months will give the mother time to complete her treatment and show she can maintain her sobriety outside of an institutional setting. *See id.*

"While time is of the essence in achieving permanency for children," "we cannot lose sight of the competing principle that 'termination is an outcome of last resort.'" *In re B.M.*, No. 13-1704, 2013 WL 6700309, at *4 (Iowa Ct. App. Dec. 18, 2013) (quoting *In re B.F.*, 526 N.W.2d 352, 356 (Iowa Ct. App. 1994)). Because we believe six additional months will give these parents the time they need to show they can maintain their individual sobriety safely and safely parent these children,

we reverse the termination of the mother's and the father's parental rights.  We remand to the juvenile court for the implementation of a six-month extension.[2]

**REVERSED ON BOTH APPEALS AND REMANDED.**

Greer, J., concurs; Vaitheswaran, P.J., dissents.

---

[2] We leave it to the juvenile court to determine the date from which the six-month extension should commence under Iowa Code section 232.104(2)(b).

**VAITHESWARAN, Presiding Judge** (dissenting).

I respectfully dissent. In denying the parents' request for additional time, the juvenile court stated:

> The court cannot find that in six months the need for removal will no longer exist. [The mother] needs to demonstrate the ability to remain clean and sober following treatment. She was not able to do so after her initial placement in inpatient care. She must also be able to protect herself from further domestic violence in whatever form. [The father] still needs to take the first step of acknowledgement. Six more months will not be long enough. Too many unanswered questions remain and [the father and mother] often refuse to answer them. At many times, if they do provide an answer, it is often a lie.

In my view, the record supports the court's conclusion.

The mother admitted using methamphetamine while she was pregnant with her second child. She successfully completed a twenty-eight day inpatient drug treatment program and maintained her sobriety for approximately five months. However, she relapsed on methamphetamine and alcohol less than three months before the termination hearing. At the time, she knew she was pregnant with her third child. She entered another inpatient drug treatment program and had yet to complete the program at the time of the termination hearing. Following her expected release in two to four months, she planned to reunite with the father of the children, a man against whom a no-contact order was entered for assaulting the mother. *See In re M.F.*, No. 10-1344, 2010 WL 3894639, at *2 (Iowa Ct. App. Oct. 6, 2010) (affirming denial of six-month extension where mother tested positive for drugs four months before the termination hearing and chose "to move back in" with a drug user).

Notably, the father testified he did not "focus on" domestic violence with his therapist even though the therapist "brought it up." Although he stated he was willing to attend "domestic classes," he acknowledged he had not done so. The father also did not consistently appear for drug testing. He was scheduled for a drug test less than three months before the termination hearing but did not go in, and he also failed to appear for a drug test the following month. In addition, the father was reported to have missed supervised visits with the children and did not attend sessions with his substance-abuse counselor as scheduled.

I would affirm the juvenile court's denial of six additional months to work toward reunification and the termination of parental rights to the children.