# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-1390
Filed February 25, 2026

————————————

**In the Interest of A.V. and A.V., Minor Children,**

**S.V., Mother,**
Appellant.

————————————

Appeal from the Iowa District Court for Polk County,
The Honorable Erik Howe, Judge.

————————————

**AFFIRMED**

————————————

Shireen L. Carter of Shireen Carter Law Office, PLC, Norwalk,
attorney for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran,
Assistant Attorney General, attorneys for appellee State.

Shannon L. Wallace of Youth Law Center, Des Moines, attorney and
guardian ad litem for minor children.

————————————

Considered without oral argument
by Tabor, C.J., and Badding and Langholz, JJ.
Opinion by Badding, J.

**BADDING, Judge.**

The two young girls at issue here—born in 2016 and 2020—were removed from their mother's custody after police found them in the back seat of a car with the mother passed out behind the wheel.[1]  Despite sixteen months of services, the mother could not resolve the substance use, mental health, and parenting concerns that prevented the children from being returned to her care.  The juvenile court terminated her parental rights under Iowa Code section 232.116(1)(f) (2025) and transferred guardianship of both girls to the Iowa Department of Health and Human Services.

The mother appeals.[2]  She concedes the State proved a statutory ground for termination, but she denies that outcome is in the best interests of her children.  Our review is de novo.  *In re P.L.*, 778 N.W.2d 33, 39–40 (Iowa 2010).

Even where a statutory ground exists, we may only affirm the termination of parental rights when it serves a child's best interests.  *In re Z.P.*, 948 N.W.2d 518, 525 (Iowa 2020).  In reviewing that issue, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."  Iowa Code § 232.116(2); *see also P.L.*, 778 N.W.2d at 37.  Termination of parental rights, as the mother emphasizes in her petition, "is an outcome of last resort."  *In re B.F.*, 526 N.W.2d 352, 356 (Iowa Ct. App. 1994).  At the same

---

[1] The mother claims she was awake but looking at her phone.  However, her blood alcohol content was more than three times the legal limit.  And she later pled guilty to child endangerment.

[2] The juvenile court also terminated the rights of a man believed to be the oldest child's father and all unknown fathers of both children.  No father has appealed.

time, where the legislative criteria for termination have been satisfied, "[t]he interests of the child take precedence over family reunification," and the "termination proceedings must be viewed with a sense of urgency." *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) (cleaned up).

At the time of the termination hearing in July 2025, the department had identified a "potential" adoptive home for the girls, but a concurrent plan was not yet in place. Based on this fact, the mother contends that terminating her rights will "create legal orphans" rather than advance the goal of permanency. However, a concurrent plan for adoption "is not a precondition to termination." *In re N.F.,* 579 N.W.2d 338, 342 (Iowa Ct. App. 1998). In some situations, terminating a parent's rights rather than leaving them intact is the better path toward permanency. *See, e.g.*, *In re T.M.*, No. 25-0252, 2025 WL 1706566, at *2 (Iowa Ct. App. June 18, 2025) (finding termination of a parent's rights to three children was in their best interests "even though adoptive homes had not yet been secured"); *In re J.R.*, No. 23-0317, 2023 WL 3612385, at *4 (Iowa Ct. App. May 24, 2023) ("While we agree it would be better if the department had a concurrent placement plan for [the child], we still think termination of the mother's rights better serves [the child]'s best interests than not given her inability to make sustained progress . . . .").

Here, the juvenile court found the benefits of termination outweighed the uncertainty about their long-term placement, noting the girls "have thrived physically, mentally, and emotionally since their removal." The court observed:

> [The older child] has been able to get extra support in school and almost catch up to grade level.[3] She has received individual tutoring, and her

---

[3] A learning assessment in the early stages of the case revealed the older child—then a second grader—was reading at a "kindergarten level."

reading and math skills have improved tremendously. She is also reportedly a social butterfly and has formed many connections at her new school. [The younger child] has also been able to receive extra support and has reduced sucking on her thumb. She has received the proper medical and dental care she needs, including tonsillectomy and adenoid surgery.

We are also persuaded by these milestones. Life was less bright for the sisters at the beginning of this case. According to the older child's teacher, she was "chronically absent" and would sometimes "wait for up to an hour after school" for the mother to pick her up. The younger girl had "significant behavioral problems" that nearly caused her expulsion from day care. And an investigation into allegations that surfaced after the girls' removal led to findings of physical and sexual abuse under their mother's care. Because the mother was unable to interact appropriately with the children during in-person visits, their interactions were moved to video only in January 2025. By May, all contact between the mother and her girls was suspended.

History is often "indicative of the quality of the future care that parent is capable of providing," so we give weight to a parent's past performance when deciding whether termination is in the best interests of their children. *In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (citation omitted). The demonstrable improvement in the girls' safety, development, and well-being after their removal confirms that termination is in their best interests. *See* Iowa Code § 232.116(2). And while the timeline for their adoption is hazy, their ongoing stability is clear. Both the guardian ad litem and case manager reported that the girls' foster family is "dedicated to continuing" their care and that the girls would remain in that placement "until we can find that forever home."

The mother also contends that six more months of services would enable her to provide the care necessary to reunite with her children. The

juvenile court may grant that relief instead of termination if a parent shows "the need for removal 'will no longer exist at the end of the additional six-month period.'" *See In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021) (quoting Iowa Code § 232.104(2)(b)).  But the mother failed to make that showing here.  Her participation in services throughout the juvenile court proceedings was sporadic.  She failed to acknowledge her continued alcohol and drug use—even when confronted with positive tests.  And about four months after the incident that required the girls' removal, she was found asleep and intoxicated behind the wheel once again.  On top of these issues, the mother's contact with the children was suspended two months before the termination hearing.  Simply put, the mother did not demonstrate the progress necessary to justify additional delay.  We decline to disturb the juvenile court's refusal of a six-month extension.

**AFFIRMED.**