## IN THE COURT OF APPEALS OF IOWA

No. 16-0635
Filed July 27, 2016

**IN THE INTEREST OF C.O.,**
**Minor Child,**

**J.T., Father,**
     Appellant.

**E.A., Mother,**
     Appellant.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Annette L.

Boehlje, District Associate Judge.

A father and mother appeal separately from the order terminating their

parental rights. **AFFIRMED ON BOTH APPEALS.**

Michael J. Moeller of Sorensen Law Office, Clear Lake, for appellant

father.

Maury J. Noonan of Pappajohn, Shriver, Eide & Nielsen, P.C., Mason City,

for appellant mother.

Thomas J. Miller, Attorney General, and Janet L. Hoffman, Assistant

Attorney General, for appellee State.

Crystal L. Ely of North Iowa Youth Law Center, Mason City, attorney and

guardian ad litem for minor child.

Considered by Potterfield, P.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

A father and mother appeal separately from the juvenile court's order terminating their parental rights to their child, C.O., born in January 2014. Both parents argue the State failed to prove the statutory grounds for termination by clear and convincing evidence and termination is not in the child's best interests. The parents also both assert they share a bond with the child that weighs against termination and the juvenile court should have granted each of them an additional six months to work toward reunification. The father further contends the court erred in denying his application for placement, home study, and background checks for his relative who was interested in serving as a permanent placement for the child. We affirm on both appeals.

## I. Background Facts and Proceedings

The family became involved with the Iowa Department of Human Services (DHS) in April 2015, due to a founded child abuse assessment for lack of supervision after a drug task force raided the parents' home and found marijuana and methamphetamine accessible to the children.[1] The child, along with two of her half-siblings, was removed from the home in June 2015 because of the parents' substance abuse, domestic violence, and mental health concerns. The child was placed in family foster care with her half-brother. She was later adjudicated a child in need of assistance (CINA).

On March 24, 2016, four days before the termination hearing, the father filed an application for placement, home study, and background checks for placement of C.O. with the father's first cousin who had approached the father

---

[1] Criminal charges stemming from the raid were subsequently dismissed.

approximately two weeks before the termination hearing, stating she and her husband were unable to have children of their own, they had completed classes to become foster parents, and they were ready, willing, and able to be a long-term, permanent placement option for C.O.

The juvenile court denied the father's application and terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(e) and (h) (2015). The court also terminated the mother's parental rights pursuant to section 232.116(1)(h). The father and mother separately appeal.

## II. Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). Our primary consideration is the best interests of the child. *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

## III. Analysis

"Our review of termination of parental rights under Iowa Code chapter 232 is a three-step analysis." *In re M.W.*, 876 N.W.2d at 219. First, we must determine whether the State established the statutory grounds for termination by clear and convincing evidence. *See* Iowa Code § 232.116(1); *In re M.W.*, 876 N.W.2d at 219. Second, if the State established statutory grounds for termination, we consider whether termination is in the child's best interests under section 232.116(2). *See In re M.W.*, 876 N.W.2d at 219–20. Finally, we consider

whether any exceptions under section 232.116(3) weigh against termination. *See id.* at 220.

### A. Statutory Grounds

Both parents argue the State failed to prove the statutory grounds for termination by clear and convincing evidence. The State argues neither parent preserved error on this issue. We apply our standard error-preservation rules to termination-of-parental-rights cases. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). At the termination hearing, the mother requested the child be returned to her care and, alternatively, that she be granted a six-month extension to demonstrate her ability to have the child returned to her. Thus, the mother has preserved error for our review. With regard to the father, at the termination hearing, the father requested only that he should receive an additional six months to participate in services and work toward reunification with C.O. Consequently, the father has not preserved error on this issue. *See id.; see also Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." (quoting *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002))). We examine the merits of the issue only with regard to the mother.

We will uphold an order terminating parental rights when there is clear and convincing evidence of the statutory grounds for termination. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is clear and convincing "when there are no 'serious or substantial doubts as to the correctness [of] conclusions of law

drawn from the evidence.'" *In re M.W.*, at 219 (alteration in original) (citation omitted).

Under Iowa Code section 232.116(1)(h), the court may terminate parental rights if the court finds the State has proved by clear and convincing evidence the child (1) is three years old or younger; (2) has been adjudicated CINA; (3) has been removed from the physical custody of the parent for at least six of the last twelve months, or the last six consecutive months and any trial period at home has been less than thirty days; and (4) cannot be returned to the custody of the parent at the time of the termination hearing. The mother does not dispute the first three elements; rather, she argues the State failed to prove the final element—whether the child could be returned to her custody at the time of the termination hearing.

We recognize the mother has made limited progress. She attended and completed inpatient substance abuse treatment in July 2015 and also participated in mental health treatment off and on throughout the case, including attending some couples counseling with the father. She has also maintained employment throughout the case. At one point, she was engaging in unsupervised visits with C.O. However, the mother relapsed and tested positive for methamphetamine as late as January and February 2016; she also admitted she had missed over half of her scheduled drug screenings. At the time of the termination hearing, the mother did not have stable housing and was living with her nineteen-year-old daughter after having nowhere else to go. Furthermore, the parents' relationship continued to be a concern throughout the case. Both parents acknowledged their relationship was unhealthy and they should not be

together, although the father later denied that their relationship had involved domestic violence. The juvenile court noted the mother regularly lied to DHS about her relationship with the father, and, as recent as January 2016, the parents had engaged in a physical altercation followed by sexual contact. At the time of the termination hearing, both parents claimed they were no longer together; however, the record indicates neither parent had addressed the domestic-violence concerns that led to the child's removal and adjudication.

Upon our de novo review, we conclude C.O. could not be returned to the mother's care and custody at the time of the termination hearing. Accordingly, we agree with the juvenile court's conclusion the State proved the grounds for termination under Iowa Code section 232.116(1)(h) by clear and convincing evidence.

### B. Best Interests

The parents next contend termination of their parental rights was not in the child's best interests under Iowa Code section 232.116(2). Even if a statutory ground for termination is met under section 232.116(1), a decision to terminate must still be in the best interests of the child under section 232.116(2). *In re M.W.*, 876 N.W.2d at 224.

We have thoroughly reviewed the record before us "giv[ing] primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). "Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be

indicative of the quality of the future care that parent is capable of providing.'" *In re A.B.*, 815 N.W.2d at 778 (citation omitted).

As discussed above, although the mother has made some progress, she continues to struggle with the same issues that led to the child's removal and adjudication—substance abuse, domestic violence, instability, and mental health. The father has also continued to struggle with these issues. He completed multiple substance abuse evaluations during the case, all of which recommended treatment, but refused to participate in treatment. At the time of the hearing, the father requested more time so that he could complete the recommended inpatient treatment he had finally scheduled for the following month. He admitted he was still using illegal substances at the time of the termination hearing. He was not employed and did not have stable housing. For several months leading up to the termination hearing, the father did not participate in services or have visitation with C.O. The record shows the parents both acknowledged what they needed to do in order to regain custody of their child but failed to do so.

"It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 777 (quoting *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010)). "It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." *Id.* at 778 (citation omitted). We cannot ask this young child to continuously wait for her parents to become stable. *See In re D.W.*, 791 N.W.2d at 707. "Time is a critical element," and parents simply "cannot wait until the eve of termination,

after the statutory time periods for reunification have expired, to begin to express an interest in parenting." *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). "[A]t some point, the rights and needs of the child[] rise above the rights and needs of the parent[s]." *In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009). Upon our de novo review, we find termination of the parents' parental rights is in the child's best interests.

### C.     Exceptions to Termination

"Once we have established that the termination of parental rights is in the [child's] best interests, the last step of our analysis is to determine whether any exceptions in section 232.116(3) apply to preclude the termination." *In re M.W.*, 876 N.W.2d at 225. Both parents assert an exception under section 232.116(3) applies because they have a strong bond with their child. *See* Iowa Code § 232.116(3)(c) (providing a court may decide not to terminate a parent's parental rights if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."). "'The factors weighing against termination in section 232.116(3) are permissive, not mandatory,' and the court may use its discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.'" *In re A.M.*, 843 N.W.2d at 113 (citation omitted).

With regard to the father, the juvenile court determined he had not seen the child for several months prior to the termination hearing and it was unclear whether they shared a bond such that termination would be detrimental to C.O.

As to the mother, the court acknowledged she shared a bond with C.O. but concluded termination would not be detrimental to the child. The court explained:

> Certainly [C.O.] will mourn for her mother if termination is ordered. If the bond is left intact, however, this case is likely to turn out similar to [C.O.]'s older siblings, who are angry at [the mother] for the way their growing-up years were handled with [the mother] engaging in drug use, domestic violence and instability. Essentially, [C.O.] will repeat what her siblings have gone through and caused them pain, stress, grief and anger.

"Our statutory termination provisions are preventative as well as remedial. Their goal is to prevent probable harm to the child; they do not require delay until after the harm has happened." *In re T.A.L.,* 505 N.W.2d 480, 483 (Iowa 1993) (citation omitted). We do not need to wait for C.O. to suffer the same harm suffered by her siblings. C.O. has a strong bond with her foster parents and an especially strong bond with her half-brother, who is also placed with the foster parents. We do not find this permissive factor weighs against termination of the parents' parental rights.

### D.    Additional Six Months

The parents also argue the juvenile court should have granted them an additional six months to work toward reunification with their child. In order to extend a child's placement for an additional six months, the juvenile court must find the need for removal will no longer exist at the end of the six-month period. *See* Iowa Code § 232.104(2)(b).

The law requires a "full measure of patience with troubled parents who attempt to remedy a lack of parenting skills," but this patience has been built into the statutory scheme of chapter 232. *In re C.B.,* 611 N.W.2d at 494 (citation omitted). There is nothing in the record to indicate the circumstances would be

such that the need for removal would no longer exist at the end of six months. *See* Iowa Code § 232.104(2)(b). Accordingly, we affirm the juvenile court's denial of the parents' requests for an additional six months.

### E.    Father's Application for Relative Placement

The juvenile court noted the father's request for placement, home study, and background checks with regard to the father's cousin and her husband occurred only on the eve of termination and denied the application because the child was thriving in her placement with her half-brother, with whom she shared a strong sibling bond. We agree with the juvenile court that placement of the child with her half-brother—the most constant and stable family member in her life—is in the child's best interests and affirm the juvenile court's denial of the father's application.

**AFFIRMED ON BOTH APPEALS.**